## Heh, Appellant, v. Consolidated Gas Company.

201      443
210    1  21

201      443
28 SC  1535
28 SC  1616
201      443
32 SC  4491
e 33 SC  1189
33 SC   585
201    443
40SC4602

*Negligence—Explosion of gas—Gas company—Province of court and jury.*

A higher degree of care and diligence is required in dealing with a dangerous agency such as gas, than in the ordinary affairs of life or business, which involve little or no risk of injury to persons or property. While no absolute standard of duty in dealing with such agencies can be prescribed, every reasonable precaution suggested by experience, and the known dangers of the subject ought to be taken.

In the case of a gas company the material and workmanship of the pipes and fittings, should be of the highest character, and every precaution which is within the bounds of reason should be taken to guard against deterioration or misplacement.

In an action against a gas company to recover damages for injuries to property resulting from an explosion of gas, the case is for the jury where it appears that the defendant maintained a pipe in the street in front of the plaintiff's property about eleven feet from the cellar wall, and about three feet under ground; that the soil in that vicinity was soft and shaly; that the plaintiff did not use gas in his house, nor was it piped for that purpose, but a short pipe extended from the main through the front wall of the cellar; that about seven feet below the bottom of plaintiff's cellar was an abandoned coal mine, the existence of which was known to the defendant; that after the explosion the underlying strata of coal was found to be burning; that according to the witnesses for plaintiff there was no indication of fire in the mine prior to the accident; that some months before

the accident there had been a break in the main, and gas had worked itself into the plaintiff's cellar; that at that time a pipe had been taken out which had been found to be very rotten and badly rusted.

*Evidence—Inference from facts—Province of court and jury.*

A binding instruction is proper where the evidence is not conflicting and presents the facts on which the case depends clearly and distinctly, but if the evidence is contradictory or if it fails to present the facts fully, so that inferences are to be drawn, or the credibility of witnesses is to be settled, the evidence must go to the jury.

The rule that a verdict may be directed where a different conclusion could not be reached by the jury without a capricious disregard of apparently truthful testimony that is in itself probable, and is not at variance with any proved or admitted facts, does not apply where there is a conflict of testimony, unless that on one side amounts only to a scintilla.

Argued Nov. 6, 1901. Appeal, No. 138, Oct. T., 1901, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1899, No. 282, on verdict for defendant in case of Raymond Heh v. The Consolidated Gas Company. Before McCOL-LUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Trespass to recover damages to property caused by the explosion of gas. Before KENNEDY, P. J.

The circumstances of the accident are fully detailed in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.

*Error assigned* was in giving binding instructions for defendant.

*J. E. O'Donnell,* with him *George H. Stengel,* for appellant.— The case was for the jury: Koelsch v. Phila. Co., 152 Pa. 355; Smith v. Boston Gas Light Co., 129 Mass. 319; Devlin v. Beacon Light Co., 198 Pa. 583; Greaney v. Holyoke Water Power Co., 174 Mass. 437.

*Edwin W. Smith,* with him *Knox & Reed,* for appellee.—When the testimony is not in itself improbable, is not at variance with any proved or admitted facts, or with ordinary experience, and comes from witnesses whose candor there is no apparent ground

for doubting, the jury is not at liberty to indulge in a capricious disbelief: Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610.

OPINION BY MR. JUSTICE POTTER, January 20, 1902:

The plaintiff in this case was the owner of a brick dwelling house, situated on Wylie avenue, Pittsburg.  The defendant company conveys gas along that street through two four-inch mains.  The one upon the south side of the street, and nearest to plaintiff's property, is about eleven feet from the cellar wall, and about three feet underground.  The evidence indicates that the soil in that vicinity is soft and shaly.  The plaintiff does not use gas in his house, nor was it piped for that purpose, but a short pipe extended from the main through the front wall of the cellar.

On the night of April 5, 1899, gas was found to be escaping from the defendant's pipes into the cellar of plaintiff's house, and an explosion occurred, followed by fire, which resulted in material injury to the property.  It appears that an abandoned coal mine extended beneath that entire neighborhood.  Near the plaintiff's house the roof of the mine is only about thirteen feet below the surface and about seven feet below the bottom of plaintiff's cellar.  After the fire in the cellar was extinguished, the underlying strata of coal was found to be burning, and notwithstanding continued efforts to put it out, continued to burn for more than a month.  The defendant company was charged with negligence in permitting the escape of the gas, and in not exercising proper caution in the care and maintenance of the pipes at that locality.  This action was brought to recover for the resulting damages.  Upon the trial, it was not denied that the gas was escaping from the main, and it is here admitted that this fact was in itself prima facie evidence of negligence, which must be met and explained by the defendant, but it is contended that the evidence upon the part of the defendant did rebut the presumption of negligence raised by the plaintiff's evidence, by showing that the leakage was caused by the caving in of the abandoned coal mine.

The defendant's theory of the case was that in some way the old workings took fire, and the pillars of coal which had been left standing for the purpose of supporting the surface burned out.  This view is thus stated in the printed brief.  "The

pillars in the mine burnt out, and let down the line, which broke, and the gas escaped."

The trial judge accepted this theory, and evidently regarded it as a satisfactory and sufficient explanation, and directed a verdict for the defendant. We find, however, from an examination of the evidence, that there was some testimony of similar trouble at that point some months before. People had been overcome by escaping gas, and the company, after searching, had found a break in the main, just across the street from plaintiff's property. The gas at that time had worked its way underground for a distance of about 125 feet, into the plaintiff's cellar. That was in February before the accident. One witness referring to the pipe, testified that "it broke on account of the sewer being put in the summer before, the summer of 1898, and that line was undermined." Defendant's district superintendent also testified that he learned during the summer before, of the existence of the old coal mine. According to another witness the pipe that was taken out in repairing the former break was "very rotten," and badly rusted. Other witnesses testified to seeing holes in the pipe when it was exposed by digging after the accident.

This evidence shows that defendant must have been familiar with the conditions in this locality, and knowing of the mine, and its possible effect on the stability of the pipe lines, it was for the jury to say whether under all the facts, defendant did its duty in regard to those lines of pipe by way of inspection, repair, bracing, etc. According to the witnesses for the plaintiff, there was no indication of fire in the coal mine beneath, prior to the time of the accident. Even if the evidence for the defendant be considered as undisputed, it does not show clearly how the leak was caused. Defendant's theory is at most only an inference from the facts shown by the testimony. The evidence taken as a whole, shows a decided difference between the witnesses as to material facts, and as to the inferences to be drawn from them. Inferences from facts are to drawn by the jury, and are not for the court.

In Spear v. Phila., etc., R. R. Co., 119 Pa. 61, Justice WIL-LIAMS said: "A binding instruction is proper where the evidence is not conflicting and presents the facts on which the case depends clearly and distinctly, but if the evidence is con-

tradictory or if it fails to present the facts fully, so that infer-ences are to be drawn, or the credibility of witnesses is to be settled, the evidence must go to the jury.    The value or legal effect of facts not in controversy may be determined by the judge, but the facts themselves if in doubt must be found by the jury."

The defendant company is dealing with a dangerous sub-stance, and must be held to a high degree of care.    As was said in Koelsch v. Philadelphia Co., 152 Pa. 355, "The definitions of negligence which have been attempted imply that a higher degree of care and vigilance is required in dealing with a dan-gerous agency than in the ordinary affairs of life or business, which involve little or no risk of injury to persons or property. While no absolute standard of duty in dealing with such agen-cies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken."

In the case of a gas company, the material and workmanship of the pipes and fittings should be of the highest character, and every precaution which is within the bounds of reason, should be taken, to guard against deterioration or misplacement.

The language of our Brother FELL in Devlin v. Beacon Light Co., 198 Pa. 585, applies directly to the case in hand, " The plaintiff showed a series of acts from which the inference of negligence on the part of the defendant arose ; that inference was sufficient to carry the case to the jury; having once arisen, it remained until overcome by countervailing proof ; whether so overcome was a question of fact which the court could not determine.    The rule stated in Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610, that a verdict may be directed where a differ-ent conclusion could not be reached by the jury without a ca-pricious disregard of apparently truthful testimony that is in itself probable, and is not at variance with any proved or ad-mitted facts, does not apply where there is a conflict of testi-mony, unless that on one side amounts only to a scintilla."

In the present case it may be conceded that the evidence tending to rebut the presumption of any negligence upon the part of the defendant company is strong, but its sufficiency is a matter for the jury and not for the court.

Judgment reversed and venire facias de novo awarded.