The ZURICH INSURANCE COMPANY,
Plaintiff-Respondent,

v.

The MISSOURI EDISON COMPANY, a Corporation, Defendant-Appellant.

No. 50589.

Supreme Court of Missouri.

Division No. 1.

Dec. 14, 1964.

Edward A Glenn, Louisiana, Ely & Hibbard, Hannibal, for respondent.

McIlroy & Millan, Bowling Green, for appellant.

HOLMAN, Judge.

On July 28, 1960, plaintiff issued its policy of insurance on the newly constructed residence of James and Gladys Bates which was located on River Ridge Road in Louisiana, Missouri. On March 19, 1961, an explosion occurred in said residence which (together with resulting fire) substantially destroyed the building and its contents. Plaintiff paid the Bateses $22,566 by reason of said loss and Mr. and Mrs. Bates executed a subrogation receipt whereby they assigned to plaintiff any

claim they might have against third parties for causing their loss. Plaintiff sued defendant, alleging that the explosion was caused by its negligence. The trial resulted in a verdict for defendant. A new trial was ordered because of error in giving Instruction No. 5 at the request of defendant. The defendant has appealed from that order.

The evidence favorable to plaintiff will support the following statement of facts: River Ridge Road runs in an east-west direction. The Bates residence was located on the north side of the street near the east end. There was one house farther east, facing on a traffic circle at the end of the street, and two other houses were located about 300 feet west of their home on the south side of the street. Those houses were occupied by the Anderson and England families. The main sewer line was located in the middle of the street and was buried at a depth of from five to nine feet. That sewer was constructed of tile and there were three manholes therein in the area near the Bates residence. One manhole was located just east of the Bates home, another was on the property line between the Anderson and England properties, and a third was located down the hill back of those homes. Twelve feet south of the sewer line defendant had installed a gas line which was constructed of 2¼-inch cast iron pipe buried approximately three feet below the surface of the street.

Mr. and Mrs. Bates moved into their new home in early August 1960. The rooms were all on one floor and there was no basement. They used gas for their cook stove, water heater, and furnace. Shortly after they moved in they experienced difficulty with their pilot lights going out. They complained to defendant and defendant's service man investigated and reported that the difficulty was caused by a leak in the meter, which he purportedly repaired. However, they continued to have trouble with the pilot lights and thereafter had their equipment checked by a plumber,

who may have helped the situation but was not able to correct the difficulty entirely. During the late summer and fall Mr. and Mrs. Bates also detected "an awful gassy odor" in their back yard.

The Bates residence had a small room in which they intended to install fixtures for a half bath. On Saturday, March 18, a plumber began work on that project. He cut a hole in the floor and installed a sewer pipe which ran from the Bates sewer line to the hole in the floor where he intended to place a toilet stool. When the plumber left that day he had not installed any fixtures, and the sewer connecting the half bath with the service line was left open. That evening Mr. Bates (who was a carpenter by trade) laid a tile floor in that room. On Sunday morning there was a strong odor of gas in the house and when Mr. Bates left to take their children to Sunday School he told his wife to stuff newspapers in the hole in the sewer opening in order to stop the gas. Mrs. Bates did that, and then decided to sweep the floor of the room. To facilitate that work she switched on the light and immediately there was "a big explosion."

During the four days following the explosion employees of the defendant and of the Public Works Department of the city made various tests in an effort to determine the cause of the explosion. Robert Stephens, who was in charge of the city water and sewer systems, testified that on Monday the manhole near the Bates home showed an explosive mixture present; that tests made by defendant's employees showed that there were explosive quantities of gas in the ground near the Anderson property; that at the request of defendant he sealed the manhole back of the Anderson property and in that way determined that no gas was coming up from the sewer system below; that after sealing the sewer he could then smell mercapton (an odorizing agent present in defendant's gas) at the Bates manhole; that on Thursday the defendant's employees made tests which indicated a break in the gas line near the

east end of the Anderson property; that when the pipe was uncovered it was found to be broken in two at that point; that defendant repaired the pipe and thereafter tests were made which indicated that there was no gas at the manholes; that on Monday he had not detected the odor of mercapton at the Bates manhole but had been able to smell it at the Anderson manhole; that he later took a sample of the air from the Anderson manhole and had it tested by chemists at the Hercules Powder Company who reported the presence of natural gas in the sample. This witness testified that sewer gas results from the accumulation of sewage and that his investigation indicated no collection of sewage in any of the manholes in that area.

The defendant offered a number of witnesses who testified concerning the manner in which the gas line in question was constructed. The evidence showed that it was constructed in August 1959 of cast iron pipe which should have been serviceable for at least 100 years. There was also testimony to the effect that defendant made tests three or four times a year in an effort to discover any leaks that may have developed in its gas lines.

Plaintiff's case was submitted under the res ipsa loquitur doctrine. It was plaintiff's theory that gas escaped from defendant's broken line and traveled through the soil to a point where it entered the main sewer, and thence through that sewer into the service line leading to the Bates residence, and entered the room where the half bath was being installed through the open, untrapped sewer connection, and there exploded.

There was evidence to the effect that sewer gas will explode and defendant sought to show, at least by inference, that the explosion in question was caused by sewer gas rather than by natural gas which may have escaped from its line. Also, one of defendant's experts testified that it was possible that the explosion caused the break in the gas line.

Plaintiff's main instruction authorized the jury to find that defendant was negligent upon a finding that it was in exclusive control of the gas line which broke and that gas escaped therefrom and entered the public sewer from which it passed into the Bates sewer and thence into the Bates residence where it became ignited and exploded.

As stated, the court granted a new trial because of error in giving Instruction No. 5, which reads as follows:

"The court instructs the jury that the defendant, the Missouri Edison Company, is not an insurer against the breakage of its street main in question and even should the jury find the main in question was broken before the explosion and that gas escaped therefrom, causing the explosion in question, yet should the jury further find that the Missouri Edison Company did not know of the break or could not [have] known of it in the exercise of reasonable care, considering all of the circumstances in evidence, in time to have repaired the break before the explosion, then in such event your verdict must be in favor of the defendant, the Missouri Edison Company; provided further that you also find that the defendant, Missouri Edison Company, was not guilty of any other negligence as set out in other instructions."

In ordering the new trial, the court filed a memorandum in which it stated that the middle portion of the instruction, "exculpating the defendant on the sole ground of lack of notice, was erroneous. This for the reason that in a res ipsa case the defendant's verdict-directing instruction must 'require a finding for the defendant *on every reasonable ground of negligence* on its part; it may not limit or restrict the finding to but one of several permissible inferences of negligence.' Jones v. Terminal R. Ass'n., [Mo.] 242 S.W.2d 473 (11–12), and see Statler v. St. L. P. S. Co., [Mo.App.] 300 S.W.2d 831(4, 5). As first

submitted, the instruction was appropriate to a specific negligence case, not a res ipsa case. In an attempt to conform Instruction No. 5 to the rule announced in the Jones and Statler cases, the court added the condition that the jury find defendant guilty of no other submitted negligence. Viewed in its entirety, Instruction No. 5 emphasized the falacious defense of the defendant's lack of timely notice, and then added a technical condition that was weak by comparison, and was misleading and confusing."

Defendant's first point is that plaintiff is in no position to complain of Instruction No. 5 because the evidence did not meet the requirements of a res ipsa loquitur case and plaintiff was therefore not entitled to have its case submitted on that theory.

■■ "In general and on principle the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, 92 A.L.R. 641. There is no question but that plaintiff's evidence complied with all of those requirements as relates to defendant's gas line at the point where the break was discovered. However, defendant asserts that it did not have control of the instrumentalities involved and did not possess superior knowledge of the cause of the occurrence because the "instrumentalities" in this case would include the city sewer and the Bates' sewer line.

We do not agree with defendant's contention. There was evidence from which a jury could reasonably find that the gas which entered the Bates home came from defendant's broken line. In that situation the basic, primary cause of the explosion was the break in defendant's line. If the line had not broken the explosion would not have occurred. The sewer lines were innocent conduits of the gas that had escaped from defendant's main. We accordingly rule that it was sufficient for plaintiff to show that the requirements of the res ipsa doctrine were present as relates to defendant's gas line.

■ Defendant also says that in proving that gas escaped from its broken line, plaintiff proved the specific negligence which caused the explosion and for that reason was not entitled to a res ipsa submission. It is true that plaintiff proved that the explosion was caused by a break in defendant's line. It did not, however, prove the negligence of defendant which caused the line to break. A line of that kind will ordinarily last for 100 years. There must have been some particular reason why this one broke in less than two years. It may have been defective when installed, or carelessly installed, or it may have been subjected to sufficient external force or internal pressure to cause it to break. It could be that defendant was negligent in not discovering the break in time to have repaired it and hence have avoided the explosion. Since plaintiff did not prove the specific *negligence* of defendant which caused the casualty, we think the case was properly submitted under the res ipsa doctrine. In the case of Adam Hat Stores v. Kansas City, Mo.Sup., 316 S.W.2d 594, we held the res ipsa doctrine applicable in an action for damages resulting from the breaking of a water main. We think the reasoning in that case is decisive here. In the respect here applicable, we can see no difference between a water pipe and a gas pipe. See also Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, and Anello v. Kansas City, Mo.App., 286 S.W. 2d 49.

In support of its contentions defendant has cited Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21, Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 246 S.W.2d 749, and Hanson v. City Light & Traction Co., 238 Mo.App.

182, 178 S.W.2d 804. Those cases do not aid defendant. In Lukitsch the plaintiff's petition alleged and her evidence disclosed the specific negligence, if any, which caused the casualty and we held it was not a res ipsa case. The specific cause of the accident was also shown in Conduitt. The Hanson case was a "gas leak" case in which we held the res ipsa doctrine applicable.

 We have concluded that Instruction No. 5 was erroneous and hence the trial court properly granted a new trial. The court's memorandum, supra, effectively points out the respects in which the instruction was improper and confusing. In practical effect the instruction could reasonably be construed as directing a verdict for the defendant upon a finding that it did not have actual or constructive notice of the break in time to have repaired it before the explosion. The proviso at the end would likely have been confusing to the jury. The phrase, "other negligence as set out in other instructions," would reasonably imply that the negligence was specified in other instructions. Since plaintiff's main instruction was drafted upon the res ipsa theory it did not submit specific negligence. In the Jones case, supra, we stated that a defendant's verdict-directing instruction in a res ipsa case must "require a finding for the defendant on every reasonable ground of negligence on its part, it may not limit or restrict the finding to but one of several permissible inferences of negligence." 242 S.W.2d 479. We cannot confidently say that Instruction No. 5 complied with the quoted requirement. At best, the proviso is vague and confusing as to the finding required of the jury in regard to other negligence.

In support of its contention that the instruction was not erroneous defendant has cited Koogler v. Mound City Cab Co., Mo. Sup., 349 S.W.2d 233, and Boresow v. Manzella, Mo.Sup., 330 S.W.2d 827. In each of those cases an instruction somewhat like the one under consideration was held not to be erroneous. However, the instructions in those cases are distinguishable because they were conventional "sole cause" instructions. The submission of one act or occurrence as the *sole cause* of the casualty, and the requirement of a finding that such act or occurrence was not negligence and that defendant was not guilty of any other submitted negligence, was sufficient to comply with the rule stated in the Jones case.

As indicated, we rule that the trial court properly granted a new trial because of the error in giving Instruction No. 5.

The order appealed from is affirmed and the cause is remanded.

All concur.