465 A.2d 1014

Herbert HALSBAND, Executor of the Estate of Bonnie
L. Cooperman, Deceased

v.

The UNION NATIONAL BANK OF PITTSBURGH, Executor
of the Estate of Jack S. Cooperman, Deceased, Appellant.

Eileen BERGER, Administratrix of the Estate of Avery Michael
Cooperman, Deceased; Eileen Berger, Administratrix of the
Estate of Carla Diane Cooperman, Deceased; and B & C
Playlands, Inc., a corporation

v.

The UNION NATIONAL BANK OF PITTSBURGH, Executor
of the Estate of Jack S. Cooperman, Deceased, Appellant.

Superior Court of Pennsylvania.

Argued March 16, 1981.

Filed Aug. 5, 1983.

Reargument Denied Oct. 17, 1983.

598

James P. McKenna, Jr., Pittsburgh, for appellant.

John E. Evans, Jr., Pittsburgh, for appellees.

Before PRICE,* BROSKY and MONTEMURO, JJ.

PER CURIAM:

These consolidated appeals arise from an airplane accident which resulted in the deaths of the pilot, Jack S. Cooperman, his wife Bonnie L. Cooperman and their children, Avery Michael and Carla Diane. Suits were brought against appellant, the estate of Mr. Cooperman, by the following appellees: the representatives of the estates of Mrs. Cooperman and the two children, and B & C Playlands, Inc., the company which owned the airplane involved. The jury rendered verdicts in favor of appellant, and appellees moved for a new trial. A new trial was granted on the basis that the trial court erred in refusing to charge the jury on the doctrine of *res ipsa loquitur*. This appeal followed. We agree with the court below that appellees are entitled to such an instruction and affirm.

On December 8, 1975 at about 3:00 p.m. the twin engine Beechcraft Bonanza took off from Meigs Field in Chicago. The plane was piloted by Mr. Cooperman and carried his wife and children as passengers. Their intended destination was Pittsburgh. It was snowing and the runway was slushy. Shortly after takeoff, two "May Day" calls came by radio from the pilot, followed by the statement that he was "ditching". The plane came down into Lake Michigan, and although the occupants were apparently uninjured in the descent and managed to get out of the plane, the entire family was drowned.

The National Transportation Safety Broad investigated the accident in an attempt to determine its cause. Although the final conclusion of the Board was not disclosed to the jury, counsel for all parties stipulated that any portion of the report could be offered in evidence, without the necessity of calling witnesses.

Appellees presented two expert witnesses, both professional pilots, who offered detailed opinion testimony in

* PRICE, J. did not participate in the consideration or decision of this case.

support of their view that the accident was caused by pilot error which constituted negligence on the part of Mr. Cooperman. While both experts stated that they did not know the exact cause of the accident (N.T. 91, 172), each indicated that he had formulated an opinion based upon the information available (N.T. 63, 172).

Appellees' first witness, Joseph Sabol, had been Mr. Cooperman's flight instructor. He testified, *inter alia,* that

The takeoff under the existing conditions would have been challenging for a pilot of far greater experience than Cooperman (N.T. 74) and even Mr. Sabol himself, with great experience, would not have done so (N.T. 77). Before takeoff, Cooperman had to remove snow from the plane and there was slush on the ground which would get on the plane and freeze into ice when it became airborne and the takeoff should not have been attempted (N.T. 64). Because it was snowing the pilot had little visual contact at takeoff, and Cooperman did not have the requisite experience to shift readily from visual to instrument control immediately after takeoff, a thing which is always precarious in conditions such as existed (N.T. 65).

Cooperman failed to turn on manually a heating device to prevent icing of the instrument which gives speed and vertical ascent information, air speed being important to a pilot in lifting off the ground (N.T. 86, 87).

The propellers of this twin engine plane sounded grossly out of synchronization going down a slushy runway into a snowstorm and Cooperman should have aborted the flight in these circumstances (N.T. 77, 90).

Instead of taking the plane into a turn when only 75 to 100 feet from the ground, Cooperman should have waited until 400 to 500 feet from the ground in accordance with the recommended procedure (N.T. 79).

Cooperman flew over water without having the necessary survival equipment aboard (N.T. 81, 88).

Appellee's second witness was Alex Gregal, a salesman of Beechcraft airplanes, who was familiar with the type of

plane involved. The following is a summary of his opinion testimony:

The accident was caused by pilot error (N.T. 169) consisting of an accumulation of shortcomings and mistakes (N.T. 149) due to inexperience and a low proficiency level of the pilot (N.T. 147), there being no record that he had any substantial experience in instrument flying (N.T. 150).

Cooperman took off with slush streaming back along parts of the plane, which at the existing freezing level could result in erroneous reading of flight instruments (N.T. 163), and also the static parts could get water in them and freeze when airborne (N.T. 165) and it was error to take off and fly into a forecast of known icing conditions without de-icing equipment on the wings or tail (N.T. 168).

Cooperman turned left when only 75 to 100 feet in the air, which is hazardous and not good procedure (N.T. 165), and particularly so in the existing weather conditions (N.T. 167) and in view of his level of ability (N.T. 167), and this caused the plane to lose some of its lift (N.T. 167).[1]

Thus, appellees' expert witnesses were clearly of the opinion that the fatal accident was caused by pilot error, inexperience, and low proficiency under the circumstances.

Appellants produced expert testimony that a mechanical idiosyncracy had been discovered in the type of plane involved, which could cause engine failure under the conditions existing at take-off. Specifically, Joseph Diblin, a retired employee of AVCO Lycoming, the manufacturer of the aircraft's engines, testified that AVCO Lycoming tests revealed that, with this model, when full alternate air heat is employed for smooth engine performance in cold weather, the alternate air heat handles should be turned to the "off" position for at least two minutes prior to take off. Failure

1. The testimony of appellees' experts was too lengthy to be related verbatim. The court below ably summarized the salient points made by these witnesses, and it is this summary which is reproduced here.

to comply with this waiting period, Mr. Diblin stated, would result in erratic fuel flow to the engines (N.T. 229).

Timothy Doyle, a pilot and accident reconstructionist, testified that it was his opinion that this idiosyncracy in the Beechcraft Bonanza resulted in engine failure which caused the accident (N.T. 299). He also concluded that Mr. Cooperman would have no way of knowing of such a problem, or how to prevent it, as the flight handbook for the Beechcraft Bonanza contained no information on the subject (N.T. 288–289).

Appellant also pointed to evidence that the pilot accomplished the act of ditching in Lake Michigan without injury to his passengers to counter appellees' assertion of pilot error and lack of expertise (N.T. 299–300).

The trial judge did not believe that the doctrine of *res ipsa loquitur* applied in the context of this evidence. On consideration of appellees' motion for a new trial, however, the court determined that in accordance with *Hollywood Shop, Inc., v. Pa. Gas & Water Co.,* 270 Pa.Super. 245, 411 A.2d 509 (1979), since appellees had not presented evidence of the "exact" cause of the accident, a *res ipsa* charge was required.

Appellant does not suggest that appellees' offer of specific acts of pilot negligence would bar application of the doctrine in this case. Rather, it is argued that appellees were not entitled to such an instruction because they failed to meet their burden under the Restatement (Second) of Torts § 326(D) (1965), adopted as the law of this Commonwealth by the Pennsylvania Supreme court in *Gilbert v. Korvette's, Inc.,* 457 Pa. 602, 327 A.2d 94 (1974).

Section 328, titled *Res Ipsa Liquitur,* provides:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts § 328(D) (1965). We find that the three requirements of § 328(D)(1) were fulfilled, and that appellees were therefore entitled to a jury instruction on the doctrine of *res ipsa loquitur*.

Appellant does not deny that any negligence of Mr. Cooperman was within the scope of his duty to his passengers, but claims that appellees did not meet their burden under § 328(1)(a) and (b).

Examination of the record in this case clearly shows that this accident was "an event … of a kind which ordinarily does not occur in the absence of negligence." The wreckage was raised from Lake Michigan, and inspected. No evidence was introduced to show that the report of the National Transportation Safety Board revealed the failure of any component of the plane which could explain the accident. Although the left engine of the plane was not recovered (N.T. 137), the right engine of the plane was examined, and nothing was found to indicate any mechanical malfunction (N.T. 317, 318). The plane was capable of flying well on one engine alone (N.T. 148, 336). Under these circumstances it would indeed be unusual for an accident of this type to occur in the absence of negligence.

■ We have unearthed no Pennsylvania case dealing with the application of § 328(D) to an airplane crash.[2] We note, however, that

> [t]he earlier cases dealing with aviation took the position that there was not yet such common knowledge and expertise of its hazards as to permit such a conclusion from the unexplained crash of a plane. With rapid technological improvement, the position began to change; and all of the later cases now agree that the safety record justifies the application of res ipsa loquitur to such a crash, or even to the complete disappearance of a plane.

Prosser, Handbook of the Law of Torts § 39 at 216 (4th Ed.1971). While the mere occurrence of an airplane accident will not automatically invoke the doctrine, when an investigation conducted by a qualified and disinterested body reveals no evidence of mechanical malfunction, it is apparent that an accident will not ordinarily have occurred in the absence of pilot negligence.

Appellant's principal claim is that "other responsible causes were not "sufficiently eliminated by the evidence." Specifically, appellant argues that in providing an. alternate explanation for the accident (the possibility of engine failure due to peculiarities of the Beechcraft Bonanza), it has precluded the sufficient elimination of "other responsible causes." We do not find this argument convincing.

As to the second requirement under Section 328(D)(1), comment f, dealing with this clause states that:

> [T]he plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant.

Restatement of Torts (Second) § 328D, comment f.

As our supreme court reiterated in *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981)

---

**2.** But see *Hunziker v. Scheidemantle,* 543 F.2d 489 (3rd Cir.1976) (applying Pa. law).

Under the teaching of *Gilbert, supra,* the critical inquiry as to whether "other responsible causes are sufficiently eliminated by the evidence" is whether a particular defendant is the *responsible cause* of the injury." Responsibility, of course, may be shared by two or more defendants. See W. Prosser, The Law of Torts (4th Ed.) § 39. "Consequently if the responsibility is vested in and shared by two or more parties, each may be subject to liability. . . ." 457 Pa. 602, 614–615, 327 A.2d 94, 101 (1974).

*Jones, supra,* 496 Pa. at 475, 437 A.2d at 1139.

The present action is not one wherein the injury was necessarily caused either by the defendant's negligence or that of third parties. Even if a jury found that the negligence of third parties contributed to appellees' injuries, it might still reasonably conclude that Mr. Cooperman was also guilty of negligence which was a concurrent and substantial factor in bringing about the accident.[3]

■ In furtherance of its position, appellant contends that failure of appellees to join Beechcraft and AVCO Lycoming[4] is a fatal flaw barring the application of Section 328D. We do not agree. Clearly, where responsibility is shared by two or more parties, the plaintiff may sue all of them jointly, but is not compelled to do so. He or she may sue any of them, and the nonjoinder of others may not be pleaded as an objection to the suit. *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 478, 437 A.2d 1134, 1141 (1981). See also, 2 Standard Pennsylvania Practice 371. In the instant case, *appellant* may have joined AVCO Lycoming and Beechcraft if convinced that these companies were

**3.** Proximate cause ". . . may be established by evidence that the defendant's negligent act . . . was a substantial factor in bringing about plaintiff's harm . . . the fact that some other cause concurs with the negligence of the defendant does not relieve the defendant from liability." *Hamil v. Bashline,* 481 Pa. 256, 265–66, 392 A.2d 1280, 1284, 1285 (1978).

**4.** It is appellant's position that AVCO Lycoming was negligent in designing the engine and Beechcraft was negligent in failing to warn of a danger of engine failure in cold weather.

responsible for the accident. See *Jones, supra,* 496 Pa. at 478, 437 A.2d at 1141.

■■■■ It is quite true that where it is equally probable that acts of parties other than the defendant are the exclusive cause of a plaintiff's injuries, *res ipsa loquitur* does not apply. This is not the case here, however. Appellees presented considerable evidence of the inexperience and negligence of Mr. Cooperman. Of course, this evidence did not establish the exact cause of the accident—indeed, if it had, no *res ipsa* instruction would have been necessary. The evidence was sufficient, however, to enable a jury reasonably to infer that Mr. Cooperman's was a substantial factor in causing the accident. Thus, appellees were entitled to a charge on *res ipsa loquitur* in accordance § 328b(3). We therefore agree with the court below that appellees are entitled to a new trial.

Order affirmed.

PRICE, J., did not participate in the consideration or decision of this case.