## Stanton v. National Fuel Gas Company

*Richard W. Epstein,* for plaintiffs.
*Norman H. Stark, Dale E. Huntley* and *Donald R. McKay,* for defendants.

ACKER, *P.J.*, April 2, 1987 — By a preliminary objection to an amended complaint pursuant to Pa. R.C.P. 1017, National Fuel Gas Company and National Fuel Gas Distribution Corporation have demurred to plaintiffs' amended complaint as to its allegations of strict liability, products liability, and breach of warranty. By preliminary objection defendants alleged plaintiffs have averred that a coupling allowed the pipeline to separate. Defendants claim

by preliminary objection that the gas in the pipeline was not defective and, therefore, the cause of action against the two defendant companies should be dismissed for failure to aver a cause of action against them. This is contrary to the allegation in the amended complaint that the gas was defective and unreasonably dangerous.[1]

At the time of argument upon the preliminary objections, however, counsel for plaintiffs and defendants, National Fuel Gas Company and National Fuel Distribution Corporation stipulated and agreed that plaintiff was advancing no contention that the transmission of gas was an ultrahazardous activity.

On February 22, 1985, at about 3:15 p.m. in the area of 34 North Sixth Street, a tremendous gas explosion occurred, completely destroying the Sharpsville Inn and an adjoining brick structure containing a ceramic shop and an apartment in which the decedents, Harold E. Stanton and Virginia Stanton, were spending the night. The Stantons were killed as a result of the explosion and subsequent fire.[2]

---

1. A court may not consider testimony or anything outside the pleadings in ruling upon a demurrer. *International Union of Operating Engineers v. Linesville Construction Company*, 457 Pa. 220, 322 A.2d 353 (1974). Only such matters as arise out of the complaint itself may be considered and the decision must be on the pleadings alone. *Bonanni v. Weston Hauling Inc.*, 392 Pa. 248, 140 A.2d 591 (1958).

2. In addition to the two above-captioned actions rising from this explosion are pending and undetermined at 419 C.D. 1986, 418 C.D. 1986, 420 C.D. 1986, 1215 C.D. 1986, 1256 C.D. 1986, 1274 C.D. 1986, 108 C.D. 1987, 109 C.D. 1987, 159 C.D. 1987 and 182 C.D. 1987. At a pretrial conference held on December 29, 1986, all of the cases were consolidated for the purpose of pretrial discovery and disposition with a plan for preparation for trial ordered by which Norman Stark, Esq., was appointed lead defense counsel for discovery as to property damage claims.

Plaintiffs have filed suit against National Fuel Gas, National Fuel Gas Distribution Corporation, Dresser Industries, and E. I. DuPont DeNemours & Company.

NFG is the parent company of NFGD, which supplies gas to the customers in Sharpsville. Dresser is the manufacturer and distributor of a device known as a "posi-hold" compression coupling used in this case which is used to join sections of polyethylene pipe. DuPont is the manufacturer and distributor of high pressure polyethylene plastic pipe also used in the National Gas distribution system in this case.

The amended complaint contains six causes of action sounding in negligence, strict liability, product liability and breach of warranty against NFG, NFGD and Dresser. Plaintiff's amended complaint also alleges counts sounding in strict liability and breach of warranty against DuPont. Only the actions alleged against NFG and NFGD are here considered.

The preliminary objections to plaintiffs' amended complaint by NFG and NFGD are to plaintiffs' counts in strict liability, products liability and warranty.[3]

---

3. NFG and NFGD although named in the caption of the third cause of action under "Products Liability" are not dealt with in the amended complaint as to any acts giving rise to a cause of action. Despite this, NFG and NFGD are named in the addendum clause for, both compensatory and punitive damages. In addition, strict liability is pled in the second cause of action against NFG and NFGD at both 999 and 1000 C.D. 1986. Therefore, this opinion will address both the strict liability theories as appear in the complaint and strict liability for an alleged ultrahazardous activity, excluding any consideration that the transmission of gas was an ultrahazardous activity, but will. address products liability under 402A and breach of warranty theories.

By the demurrer to plaintiffs' amended complaint defendants are deemed to admit that NFG and NFGD supplied defective natural gas to the area including the Sharpsville Inn.

A demurrer can be granted only when it appears with certainty that plaintiffs have failed to state a cause of action. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976).

During July, August and September 1979, NFGD installed a six-inch diameter polyethylene plastic gas main north from Ridge Avenue under North Sixth Street and under railroad tracks. Its purpose was to serve Shenango Incorporated, a steel company, and only that company. There were, therefore, no service lines off of this main to the Sharpsville Inn.

During construction of the gasline, NFGD used compression couplings supplied by Dresser to join sections of the pipeline. After the explosion, an examination of the six-inch gas main located under North Main Street disclosed that one of the compression couplings used to join sections of the pipe had failed, causing natural gas to escape.

Plaintiff's count in strict liability for an ultrahazardous activity alleges that NFG and NFGD were engaged in manufacturing, sale and distribution of natural gas. The complaint alleges that the gas itself was defective and unreasonably dangerous to plaintiffs without naming the specific defect.[4]

---

4. Although defendants deny this, they are bound by this allegation at this pleading stage.

Two rules which must be followed concerning the entry of summary judgment on demurrer are:

"(1) The question to be decided is not whether the statement of plaintiff's claim is so clear in both form and specification as to entitle plaintiff to proceed to trial without amending

The theories of liability are hereinafter discussed.

## DISCUSSION
### Product liability

Pennsylvania has adopted the Restatement (Second) of Torts §402A which imposes strict liability upon those who sell products unreasonably dangerous to the user because of defective manufacture or design. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966); *Sochanski v. Sears, Roebuck & Co.*, 621 F.2d 67 (3d Cir. 1980), on remand, 504 F.Supp. 182 (E.D. Pa. 1980), appeal dismissed, 661 F.2d 915 (3d Cir. 1981), vacated and remanded, 689 F.2d 45 (3d Cir. 1982); *Conti v. Ford Motor Company*, 743 F.2d 195 (3d Cir. 1984), cert. denied, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985).

Our courts have decided that no current social interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then avoid responsibility for damages caused by the defect. *Salvador v. Atlantic Steel Boiler Company*, 457 Pa. 24, 319 A.2d 903 (1974). The purpose of the rule of strict product liability is protection of the average customer who is not really in a position

---

it, but whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiff.

"(2) Where a doubt exists as to whether or not summary judgment should be entered, this should be resolved in favor of refusing to enter it." Goodrich-Amram 2d §1017(b):11, p. 85.

At argument we asked plaintiff's counsel what defect was contended. The only defect mentioned was a possible failure to odorize the gas. Failure to odorize may be used as a basis of liability, *Evans v. Thomas*, 304 Pa. Super. 338, 450 A.2d 710 (1982) but this gas was odorized for it was detected by the Sharpsville Police Officer due to its odor prior to the explosion.

to bargain effectively or intelligently. *Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974).

A court must, however, make a threshold determination as a matter of social policy in each case whether it would be appropriate for product liability treatment. *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020 (1978); *Carrecter v. Colson Equipment Co.*, 346 Pa. Super. 95, 499 A.2d 326 (1985). We have concluded in this case that as a matter of social policy the sale of gas can be appropriate for products liability treatment. The issue, therefore, is whether the facts of the case warrant such application.

The only appellate decision in this commonwealth to address the applicability of strict liability under 402A to a public utility is *Schriner v. Pennsylvania Power & Light Company*, 348 Pa. Super. 177, 501 A.2d 1128 (1985). That case involved the supplying of electric power to milking equipment. It concluded that electricity can be a "product" for purposes of the doctrine of strict liability and that liability may be imposed against the public utility. Relying on authorities from other jurisdictions, the court concluded that electricity can be a product under 402A. It held that a literal sale may not be required. It pointed out particularly, however, that entry of electricity into the stream of commerce is deemed to occur when it leaves the transmission lines and passes through the customer's meter, an event not present in the instant case. While still in the distribution system, electricity is deemed to be a service and not a product. Therefore, *Schriner* does not authorize the imposition of strict liability under 402A in the instant case because the gas had not passed through a meter.

Pennsylvania lower courts have, however, imposed such liability. *University of Pittsburgh v. Equitable Gas Company,* 5 D.&C.3d 303 (1978) (characterizes gas as a product); and *Wivagg v. Duquesne Light Company,* 73 D.&C.2d 694 (1975) (supplying of electricity to a house was declared to be a sale carrying warranties under the Commercial Code even though there was no evidence that the electricity had passed through the meter. The court concluded that whether a sale or a service, warranties were given). But see, *Rush v. UGI Corp.,* 12 D.&C.3d 302 (1979) (a natural gas company does not bear strict liability in tort under section 402A for damages caused by the explosion of a defective gas main as there was no sale of a defective product in that the main was merely to distribute the defendant's product, natural gas, and was not sold to the gas customers). Also see, *Karle v. National Fuel Gas Distribution Corp.,* 448 F. Supp. 753 (W.D. Pa. 1978) (application of 402A was held under the facts of the case as inapplicable against the gas company which merely abused the pipeline which was apparently fit when installed).

Application of 402A requires that five elements be established to impose liability: (1) a product; (2) a sale of that product; (3) a user or consumer; (4) a defective condition, unreasonably dangerous; and (5) causation. *Schriner v. Pennsylvania Power & Light Co., supra.*

## Product

It appears that gas as well as electricity can be a product under 402A. *Schriner v. Pennsylvania Power & Light Company, supra; Smith v. Home Light & Power Company,* 695 P.2d 788 (Colorado App. 1984) (relied upon by the Superior Court in *Schriner, supra); Ransome v. Wisconsin Electric*

*Power Company,* 87 Wis. 2d 605, 610, 275 N.W.2d 641, 643 (1979); *Young v. Robertshaw Controls Company,* 430 F.Supp. 1265 (E.D. Pa. 1977) (402A count against supplier of gas dismissed where the plaintiff's complaint did not contain allegations gas supplied was defective); *Rush v. UGI Corp., supra; University of Pittsburgh v. Equitable Gas Company, supra.*

## *Sale*

Was there a sale of the product? The amended complaint does allege that defendant's gas main was in a defective condition and unreasonably dangerous and that the gas itself was defective without an allegation of how it was defective. *Schriner, supra,* appears to require that a product which is in a defective condition, unreasonably dangerous in the distribution system, and that the product passes through the customer's meter to be in the stream of commerce. See also, *Smith v. Home Light & Power Company,* 695 P.2d 788 (Colo. App. 1984); *Rush v. UGI Corporation, supra,* also supports a conclusion that a defect in the distribution system is insufficient.

*Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970) rejects defendant's attempt to distinguish between a sale and a service when whole blood is involved.

In the sale of gas, the delivery is within the distribution system under the exclusive control of the seller, being the gas company. The buyer, therefore, not only purchases the service or product but also part of and is dependent upon the distribution system over which he has no control concerning defects. The buyer and third persons are exposed to hazards of the entire system of distribution. Because the gas in this case did not enter through

plaintiffs' piping system or through their meter, they are no different than any non-customer who suffered injury or loss. We conclude that a defect in the distribution system may not be regarded as a defect in the product and a sale of the product.

## Users or Consumers

Were the plaintiffs users or consumers? The American Law Institute by caveat specifically declined to express an opinion as to whether 402A applies to harm to persons other than users or consumers. Under the facts of this case, the issue is not nearly as critical as if plaintiffs were not users. It appears that they were, but it was not the lines that led into their premises which were alleged to be defective, but rather a jointure of lines in the public streets some distance away. The line particularly in issue goes to Shenango Inc. There are no connecting pipes to any of the surrounding properties including the Sharpsville Inn where plaintiffs' decedents were located at the time of the explosion. *Pegg v. General Motors Corp.*, 258 Pa. Super. 59, 391 A.2d 1074 (1978) appears to be the only Pennsylvania case dealing directly with this subject. Plaintiff, who was a passenger in an automobile driven by one Parsons, was extensively burned in a flash fire caused by the decomposition and ignition of a swimming pool sanitizer which Parsons had stolen and placed on the rear floor of the car. The contention by the manufacturer was that it owed no duty to either the driver or the passenger, because the driver, Parsons, got the material from a fellow city employee from the city's supplies. The court appeared to conclude that the mere fact that Parsons had so acquired the goods did not preclude an action under theories of strict liability or negligence if some third person is injured by a defect in the product. It is not

clear as to whether 402A would be found to be applicable if neither the injured parties nor anyone had purchased the goods. Spaeth, *J.* assumes the goods were sold. We conclude, however, liability cannot be based on 402A under the facts of our case. See, *Elmore v. American Motors Corporation,* 70 Cal.2d 578, 75 Cal. Rptr. 652, 451 P.2d 84 (1969).[5]

## Defective Condition
## Unreasonably Dangerous

Defendant has alleged that the gas was defective without specifying in what manner, the proof of which will be required at trial. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). There must be proof that the product lacked an element necessary to make it safe for its intended use. *Dambacher by Dambacher v. Mallis,* 336 Pa. Super. 22, 485 A.2d 408 (1984); *Thompson v. Anthony Crane Rental Inc.,* 325 Pa. Super. 386, 473 A.2d 120 (1984). See also, *Decorative Precast Stone Erectors Inc. v. Bucyrus-Erie Company,* 493 F.Supp. 555 (W.D. Pa. 1980), affirmed, 642 F.2d 441 (3d Cir. 1981); and *Bucyrus-Erie Company v. Jones & Laughlin Steel Corp.,* 642 F.2d 440 (3d Cir. 1981).

The defect is not limited to its usual meaning of a fault, flaw or blemish in the manufacture or fabrication of the product. Critical factors under such formulation is whether the product is unreasonably dangerous. *Azzarello v. Black Bros. Co., supra;*

---

5. Cases which have rejected the extension of 402A to bystanders are *Davidson v. Leadingham,* 294 F.Supp. 155 (E.D. Kentucky 1968); *Mink v. University of Chicago,* 460 F.Supp. 713 (N.D. Ill., 1978); *Jones v. Hutchinson Manufacturing Inc.,* 502 S.W.2d 66 (Kentucky 1973).

*Burch v. Sears, Roebuck & Company,* 320 Pa. Super. 444, 467 A.2d 615 (1983).

We are required at this stage to conclude that the product was defective in view of the pleadings.

## Causation

It must be established that there was causation. 402A is not an appropriate theory in a gas explosion case if it is established that the pipeline was fit when installed and that the gas company merely abused it. The implication, however, is that if there was more than mere abuse, even though apparently fit when installed, liability could be imposed under 402A. *Karle v. National Fuel Gas Distribution Corp, supra.* The defect, of course, must be established as the cause of the injury. *Berkebile v. Brantley Helicopter Corp., supra.*

Because there was not a sale, we conclude that 402A is not applicable.

## Breach of Warranty

It is contended by plaintiffs that liability may be imposed in this case upon breach of warranty. There is no express warranty stated in the pleadings. Recovery could be based upon the implied warranty of merchantability or usage of trade, 13 Pa.C.S. §2314, and fitness for a particular use at 2315.[6]

It must be determined, however, whether natural gas is a "good." The Commercial Code, 13 Pa.C.S. §2105, defines "goods" as all things which are

---

6. In *Murphy v. Petrolane-Wyoming Gas Service,* 468 P.2d 969 (Wyoming 1970), it was held that a natural gas retailer and wholesaler was deemed to give an implied warranty that the gas was merchantable and fit for its intended purpose.

moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action. Natural gas was found to be a "good" for purposes of Uniform Commercial Code warranty in *University of Pittsburgh v. Equitable Gas Company*, 5 D.&C. 3d 303 (1978).[7]

In *Williams v. West Penn Power Company*, 502 Pa. 557, 566, 467 A.2d 811, 815 (1983), it was held that the code should be construed as co-extensive with 402A. If natural gas can be considered as a "product" for the purposes of 402A, it should also be considered a "good" for purposes of breach of warranty and we so conclude.

It is required that there be a sale of the "good." *Gardiner v. Philadelphia Gas Works*, 413 Pa. 415, 197 A.2d 612 (1964) is a statute of limitations case. In reversing a lower court which had concluded that there was a two-year instead of a four-year statute of limitations in sale of gas explosion cases, the court said in footnote 8:

"It is undisputed that the supplying of gas to Gardiners' home on a month-to-month basis falls within the definitions of a 'contract for sale' or 'sale' within section 2-106 of the code, 12 P.S. 2-106. [Now, 13 Pa.C.S. §2106]." *Gardiner* at 420, 197 A.2d at 614.

There, a "sale" is defined as the passing of title from the seller to the buyer for a price.[8]

---

7. By analogy, the sale of water at a fixed compensation was held to be goods under the New York Sales Act, but there was no warranty of fitness attendant to the sale. *Canavan v. Mechanicville*, 229 N.Y. 473, 128 N.E. 882 (1920).

8. *Engleman v. Eastern Light Company Inc.*, 30 D.&C.2d 38 (1962) also holds that there is a four-year statute of limitations for suits of breach of warranty for sale of electricity.

Electricity has been held to be the subject of transfer and therefore the imposition of strict liability in tort or an implied warranty. *Wivagg v. Duquesne Light Company*, 73 D.&C. 2d 694 (1975). There, of course, can be a warranty even though there be no sale if it be regarded as a service such as supplying whole blood. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970). A burglar alarm system was deemed to be a "good" under the Commercial Code in *Lobianco v. Property Protection Inc.*, 292 Pa. Super, 346, 437 A.2d 417 (1981). Designing and engineering has been held not to be a "good." *Lincoln Pulp & Paper Company v. Dravo Corp.*, 436 F.Supp. 262 (D. Me. 1977).

In *Williams v. West Penn Power Company*, 313 Pa. Super. 461, 460 A.2d 278 (1983), affirmed, 502 Pa. 557, 467 A.2d 811 (1983), an effort was attempted to hold the defendant under both 402A and breach of warranty. The court concluded, however, that the only "sale" was the purchase of the ladder the instrumentality by which the electricity passed to plaintiff. There was no sale as to West Penn Power Company. Nor was there held to be a sale in *Rush v. UGI Corp.*, 12 D.&C. 3d 302 (1979).[9]

We concluded that supplying of gas which does not pass through the meter, but rather goes into the defendant's property other than through plaintiff's piping is not a sale.[10]

---

9. A contrary view is found in *Wivagg v. Duquesne Light Company, supra.*

10. Cases in other jurisdictions where electricity was held to be a "good" within the Sales Act and therefore carry implied warranties of merchantability are: *Navarro County Electric Cooperative Inc. v. Prince*, 640 S.W.2d 398 (Tex. App. 1982); *Farina v. Niagara Power Mohawk Corp. and Radio Shack*, 438 N.Y. Supp.2d 645; 81 A.D.2d 700 (Supreme Court Appel-

Wherefore, we conclude that liability cannot be established through breach of warranty.

## Mere Happening of an Explosion

The mere happening of an explosion in itself is insufficient to establish liability. Under a negligence theory, it must be shown that the gas company knew or should have known of the dangerous condition and its main. *Carlile-Doughty Corp. v. Philadelphia Electric Company*, 210 Pa. Super. 117, 232 A.2d 631 (1967); *First Methodist Episcopal Church v. Bangor Gas Co.*, 7 D.&C.2d 730 (1956), affirmed per curiam, 388 Pa. 115, 130 A.2d 517 (1957).[11]

## Strict Liability

Although plaintiff disavows a desire to proceed on the basis of strict liability concerning the transmission of gas, there are allegations of strict liability other than through 402A and breach of warranty. In strict liability as in 402A the court must weigh the advantages to a community as against the potential injury to a plaintiff in determining whether absolute liability will be held. *Albig v. Municipal Authority of Westmoreland County*, 348 Pa. Super. 505, 502 A.2d 658 (1985). Strict liability was refused in gas explosion cases where it was not shown that the

___

late Division N.Y. 1981); *Williams v. Detroit Edison Co.*, 63 Mich. Appeal 559; 234 N.W.2d 702 (Mich. 1975); *Buckeye Union Fire Insurance Company v. Detroit Edison Co.*, 38 Mich. Appellate 325, 196 N.W.2d 316 (Court of Appeals Michigan 1972); *Helvey v. Wabash County REMC*, 278 N.E.2d 608 (Court of Appeals of Indiana 1972).

11. Liability has been founded on maintenance of a nuisance where it was held that noxious products from an oil refinery were found to have killed growing vegetables, thereby excluding consideration of questions of negligence. *Vautier v. Atlantic Refining Company*, 231 Pa. 8, 79 Atl. 814 (1911).

product was defective. *Gray v. Enserch*, 665 S.W.2d 101 (Texas Appeals 1984); *New Meadows Holding Company v. Washington Water Power Co.*, 34 Wash. App. 25, 659 P.2d 1113 (1983), affirmed 102 Wash. 2d 495, 687 P.2d 212 (1984); *Hartford Fire Insurance Company v. Public Service Co.*, 676 P.2d 25, 27 (Colo. Appeals 1983); *Mahowald v. Minnesota Gas Company*, 344 N.W.2d 856, 860-1 (Minn. 1984).

In *Albig v. Municipal Authority of Westmoreland County*, *supra*, the court concluded that absolute liability would not be held as to a dam located above the municipality for this is the type of activity which would be considered "abnormally dangerous," but the value to the community outweighs the dangerous attributes of the activity. We do not deed the supplying of natural gas through a gas system to be abnormally dangerous for the purpose of determining absolute liability.[12]

Strict liability for escaping gas resulting in an explosion was not held in *Mahowald v Minnesota Gas Company*, *supra*. Nor in *Karle v. National Fuel Gas Distribution Corp.*, 448 F. Supp. 753 (W.D. Pa. 1978).

General negligence commensurate with the risk when viewed as one of reasonable care under the circumstances has been applied in gas cases in Pennsylvania in the past. *Kibele v. Philadelphia*, 105 Pa. 41 (1884); *Koelsch v. Philadelphia Company*, 152 Pa. 355, 25 Atl. 522 (1893); *Heh v. Consolidated Gas Company*, 201 Pa. 443, 50 Atl. 994 (1902); *Moidel v. Peoples Natural Gas Company*, 397 Pa. 212, 154 A.2d 399 (1959); *Prichard v. Consolidated*

12. In *Matulevich v. Matulevich*, 345 Pa. Super. 507, 498 A.2d 939 (1985), hunting was not held to be an activity which would impose liability irrespective of negligence.

*Gas Company,* 2 Pa. Super. 179 (1896); *Stoner v. Pennsylvania Fuel Supply Company,* 40 Pa. Super. 599 (1909); *Fey v. Scranton-Spring Brook Water Services Co.,* 40 Lacka. Jur. 137 (1938).

A gas company is also either expressly or impliedly held to a duty to make reasonable inspection to discover the condition of its main. The failure to do so will cause the gas company to be negligent in not discovering and repairing the break. *Koelsch v. Philadelphia Co., supra; Heh v. Consolidated Gas Company, supra; Shirey v. Consumers' Gas Company,* 215 Pa. 399, 64 Atl. 541 (1906); *King v. Equitable Gas Company,* 307 Pa. 287, 161 Atl. 65 (1932); *Moidel v. Peoples Natural Gas Company, supra; Prichard v. Consolidated Gas Company, supra.*

In more recent years the test of liability as to a gas company is determined from testimony not of intelligent laymen, but rather experts in underground pipe corrosion. *Hemrock v. Peoples Natural Gas Company,* 423 Pa. 259, 223 A.2d 687 (1966). The duty to regularly inspect continues under our law. *Karle v. National Fuel Gas Distribution Co., supra; Stephany v. Equitable Gas Company,* 347 Pa. 110, 31 A.2d 523 (1943).

We do not conclude strict liability applies in this case.

## Doctrine of Res Ipsa Loquitur

Res ipsa loquitur must be addressed in this case even though it has not been specifically pled for such is not required. *Hollywood Shop Inc. v. Pennsylvania Gas and Water Company,* 270 Pa. Super. 245, 411 A.2d 509 (1979). Pennsylvania accepted Restatement (Second) of Torts § 328D as the declaration of our res ipsa loquitur doctrine in *Gilbert v.*

*Korvette's Inc.*, 457 Pa. 602, 327 A.2d 94 (1974). "Res ipsa loquitur is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence — a rule of evidence." *Id.* at 611, 327 A.2d at 99.

By acceptance of 328D the appellate court not only abrogated formalistic distinctions based on substantive duty, but also eliminated another complication inherent in the prior rules. It is no longer required that defendant be in exclusive management or control as a prerequisite to the application of the res ipsa loquitur doctrine. The issue as to whether the occurence is likely without the advent of negligence by the party to be charged under res ipsa loquitur remains as in *Commonwealth v. Montour Transport Company*, 365 Pa. 72, 73 A.2d 659 (1950) (where it was determined that a gasoline truck does not catch fire on a public highway in the ordinary course of things if it is properly maintained, loaded or operated).

It is true that the mere happening of an accident in the absence of proof will not permit a case to be submitted on the doctrine of res ipsa loquitur. *Hanley v. Peoples Natural Gas Company*, 325 Pa. 6, 188 Atl. 157 (1936). The doctrine of res ipsa loquitur has been applied in factual situations not previously considered in recent years. In *Halsband v. Union National Bank of Pittsburgh*, 318 Pa. Super. 597, 465 A.2d 1014 (1983), the doctrine was held to apply against the pilot of a private plane which unexpectedly crashed killing himself and his family. In *Smith v. City of Chester*, 357 Pa. Super. 24, 515 A.2d 303 (1986), a lower court was reversed for failure to give res ipsa loquitur jury instructions based on Restatement of Torts 328D where the plaintiff stepped on a grate in a street. It was concluded that the weight of plaintiff alone would not

240

have broken the grate if it had not been previously broken. A lower court in *Hollywood Shop Inc. v. Pennsylvania Gas and Water Company, supra*, was reversed on appeal for failure to charge res ipsa loquitur where an expert testified that the break of a water line occured due to corrosion from electrolysis for a period of years.[13]

The doctrine of res ipsa loquitur has been used in numerous factual situations approaching that here involved in other jurisdictions.[14]

13. In *Lanza v. Poretti*, 537 F.Supp. 777 (E.D. Pa. 1982), res ipsa loquitur was held not to apply where a fire originated on the first floor and spread into plaintiff's second floor fashion design business. The mere occurrence of the fire was held inadequate to warrant the use of res ipsa loquitur. Further, arson may have been involved. Where there are two equally probable cause for a fire, the case cannot be submitted to the jury on the doctrine of res ipsa loquitur.

14. *Phillips v. Delaware Power & Light Company*, 202 A.2d 131 (Delaware 1964) (involving the break in a main caused by deterioration, shock from traffic or frost); *Hopkins v. Chesapeake Utilities Corp.*, 290 A.2d 4 (Delaware 1972) (injured employee working in a manhole as a result of an explosion, res ipsa loquitur applicable); *Metz v. Central Illinois Electric & Gas Company*, 32 Illinois 2d 446, 207 N.E. 2d 305 (1965), (res ipsa loquitur held applicable to the explosion of a house where a gas leak from a company gas main and the main had been under the control of the gas company for seven years); *Burbrick v. Northern Illinois Gas Company*, 130 Ill. App. 2d 99, 264 N.E. 2d 560 (1970) (liability under res ipsa loquitur even though the actual physical control of the piping and equipment was not under the gas company but where the gas company inspected the equipment regularly); *Bayou Materials Inc. v. Donaldsonville*, 192 So.2d. 380 (La. 1966), following *St. Paul Mercury Insurance Co. v. Donaldsonville*, 192 So.2d 380 (La. 1966) (gas observed burning from the ground in a crack in the pavement in the street in front of the premises); *Zurich Insurance Company v. Minnesota Edison Company*, 384 S.W.2d 623 (Missouri 1964) (res ipsa loquitur held to apply for an explosion and damage to a house where recent-

We conclude res ipsa loquitur may be applied in these cases.

## Punitive Damages

Although not subject to preliminary objections, the parties desire this court to address the issue of punitive damages prior to the next pretrial conference.

The awarding of punitive damages is within the discretion of the factfinder. *Dean Witter Reynolds Inc. v. Genteel,* 346 Pa. Super. 336, 499 A.2d 637 (1985); *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa. Super. 90, 464 A.2d 1243 (1983).

Pennsylvania has adopted Restatement (Second) of Torts §908 and the comments thereunder regarding the imposition of punitive damages. *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984); *Dean Witter Reynolds Inc. v. Genteel, supra.* By section 902(2) punitive damages are proper where defendant's conduct is outrageous because of an evil motive or reckless indifference to the rights of others. In assessing this the trier of fact can properly consider the character of defendant's act, the nature and extent of the harm to plaintiff

---

ly constructed gas lines should have been serviceable for at least 100 years and that the line at the point of the break was under the control of defendant even though the gas entered the home through sewer lines); *Karle v. National Fuel Gas Distribution Co., supra,* (gas company held liable for personal injuries sustained by a bank teller when the natural gas escaped from the distribution main, as in the instant case, leaked into the bank and exploded); *Hartford Fire Insurance Company v. Public Service Company,* 676 P.2d 25 (Colo. App. 1983) (downtown building destroyed and several adjacent buildings damaged through gas explosion. Following explosion small leaks were found in nearby gas line. Res ipsa loquitur should have been charged).

that defendant caused or intended to cause and the wealth of defendant.

Such damages may be based on conduct which is "malicious," "wanton," "reckless," "willful," or "oppressive." *Feld v. Merriam, supra,* at 395, 485 A.2d at 747-8, quoting *Chambers v. Montgomery,* 411 Pa. 339, 344-5, 192 A.2d 355, 358 (1963).

In making such a determination the factfinder must look at the act itself and all the circumstances including the motive of the wrongdoer and the relationship between the parties. *Martin v. Johns-Mansville Corp., supra; Felt v. Merriam, supra; Chambers v. Montgomery, supra.*[15]

In that this case will be submitted to the jury upon negligence, possibly assisted by the doctrine of res ipsa loquitur, we conclude that it is possible that punitive damages may be awarded by a jury. The exact facts, however, will determine the eventful outcome.

Hence this

---

15. We need not be concerned as to whether punitive damages can be awarded in 402A actions due to our previous holding. The law, however, is somewhat in a state of uncertainty. *Martin v. Johns-Mansville,* 322 Pa. Super. 348, 469 A.2d 655 (1983) concluded that the better view is to permit punitive damages in products liability actions. This decision was appealed to the Supreme Court of Pennsylvania in 508 Pa. 154, 494 A.2d 1088 (1985). The Superior Court was reversed and the matter was returned for further proceedings but only two justices agreed in the opinion announcing the judgment of the court. That opinion concluded that under Pennsylvania law only reckless conduct as described in comment A to section 500 of the Restatement (Second) of Torts is sufficient to create a jury question on the issue of punitive damages. Thus, "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interest of others." *Id* at 171-2, 494 A.2d at 1097-8.

## ORDER

And now, on this April 2, 1987, it is hereby ordered and decreed that the preliminary objections in the nature of demurrers as to causes of action founded on strict liability, Restatement (Second) of Torts §402A and breach of warranties are all granted.