420 A.2d 514

**Margaret C. McGOWAN**

v.

**DEVONSHIRE HALL APARTMENTS, Jenkins Elevator & Machine Co.**

**Appeal of DEVONSHIRE HALL APARTMENTS.**

Superior Court of Pennsylvania.

Argued June 4, 1979.

Filed May 16, 1980.

230

232

George J. McConchie, Media, for appellant.

James F. Proud, Media, for Jenkins Elevator & Machine Co., appellee.

Before PRICE, GATES and DOWLING, JJ.*

PRICE, Judge:

Margaret C. McGowan instituted suit against appellant, Devonshire Hall Apartments, for injuries she sustained as a result of the malfunction of a self–service elevator in that apartment house, where she was a tenant. Appellant joined as an additional defendant the Jenkins Elevator & Machine Company, which had contracted to make inspections of and provide limited service to the elevator in the apartment building. A jury trial resulted in a verdict against appellant and exoneration of the elevator service company, Jenkins. Appellant's post–trial motions for a new trial were denied, and this appeal was taken seeking the grant of a new trial because the verdicts in favor of Mrs. McGowan and Jenkins were allegedly against the weight of the evidence and because of alleged errors in the reception of evidence and the charge to the jury. We find no merit in these contentions and affirm the order of the court of common pleas.

A trial judge may not grant a new trial on the ground that the verdict is against the weight of the evidence simply because he believes that the jury should have decided differently. He should reserve that relief for use only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and when it mandates that another opportunity be given to prevent a miscarriage of justice. *Ditz v. Marshall,* 259 Pa.Super. 31, 393 A.2d 701 (1978); *Dixon v. Andrew Tile & Manufacturing Corp.,* 238 Pa.Super. 275, 357 A.2d 667 (1976). The grant or refusal of a new trial, therefore, is within the sound discretion of the trial judge, and on appeal the scope of review is limited to a determination of whether the trial court has committed a palpable abuse of discretion or a clear error of law. *Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970); *Palmer v. Brest,* 254 Pa.Super. 532, 386 A.2d 77 (1978). In making this

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County Pennsylvania, and Judge JOHN C. DOWLING of the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by special designation.

determination, our task is to consider all the evidence. *Sindler v. Goldman*, 256 Pa.Super. 417, 389 A.2d 1192 (1978); *Hayter v. Sileo*, 230 Pa.Super. 329, 326 A.2d 462 (1974).

With these tenets firmly in mind, we proceed to an examination of the evidence adduced at trial. Mrs. McGowan testified that the accident occurred sometime after 9:30 a. m. on February 1, 1973, as she was stepping into the elevator, which happened to be stopped at her floor. She opened the outside door of the elevator, holding it in her right hand, and pushed open the accordion--like metal gate. She then placed her left foot onto the floor of the elevator carriage. At this moment, as she was poised with one foot on the floor of the elevator and one foot on the floor of the corridor, with both doors to the elevator open, the elevator took a sudden leap upward throwing her backward to the floor of the corridor. Her testimony further revealed that she had encountered no previous difficulties in the operation of the elevator except that it frequently was not flush with the floor of the corridor.

Gedford Ward, the superintendent–janitor at the Devonshire Hall Apartments, testified that at about the time of the accident, two men from Jenkins were at the apartments to carry out their regular monthly inspection. One of these men, Roy Porta, returned from the second floor and told both his co–worker and Ward that a lady had fallen there and was lying on the floor and that the elevator carriage was about a foot and a half above the floor of the corridor. Ward further testified that only Jenkins repaired the elevator and that no repairs were made subsequent to the accident until 1976 when a new cable was installed. He stated that he had never received notice of any malfunctions of the elevator, either prior or subsequent to the accident, and that the elevator functioned properly for him within an hour or two of the incident.

Roy Porta was called as a witness and denied making any observation or statement about the elevator at the time of the accident; his only recollection was that he stated there was a lady upstairs who needed help. He claimed that

during his inspection at around 10:00 a. m. or later that morning, the elevator operated normally.

Finally, Mr. James Creighton testified that he was also coincidentally on the premises to make one of the inspections mandated by statute.[1] Mr. Creighton was licensed by the Commonwealth to make these inspections and was employed by a subsidiary of the liability carrier for the Devonshire Hall Apartments to inspect elevators on premises insured by that carrier. His inspection was completed at least one–half hour before the accident and disclosed no defects. Mr. Creighton testified that he believed that it was impossible for an accident to occur as Mrs. McGowan testified because opening either of the doors to the elevator would break an electrical circuit preventing the elevator motor from running and leave engaged a spring operated brake holding the elevator. His inspection just prior to the accident revealed that the safety circuit and the brake mechanism were both functioning properly.

Viewing this evidence as a whole, we are immediately presented with two issues. The first is one of causation–did Mrs. McGowan sufficiently prove that the harm she suffered was due to the malfunctioning of the elevator. The jury obviously resolved this initial question in favor of Mrs. McGowan, and we find the record clearly supports this conclusion. Mrs. McGowan gave her version of the accident which was corroborated, in part, by the alleged statement made by Mr. Porta. Although Mr. Porta at trial denied making this statement, such conflicts in testimony are for the jury to resolve as the credibility of the witnesses is for their judgment. *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975); *West Penn Administration, Inc. v. Union National Bank*, 233 Pa.Super. 311, 335 A.2d 725 (1975).

The evidence concerning inspections made just before and after the accident and the lack of other complaints of malfunctioning does not persuade us that the jury's conclusion that the event happened as Mrs. McGowan described

1.  Act of May 2, 1929, P.L. 1518, § 7, *as amended,* April 8, 1937, P.L. 277, § 1, June 23, 1972, P.L. 485, No. 156, § 2, 35 P.S. § 1347.

was against the weight of the evidence. The crucial time is the exact moment of the accident because even in the elapse of a brief period, conditions may change. Although the occurrence of an accident may become less likely, the possibility is not eliminated. The lack of complaints also does not indicate that a malfunction could not have occurred or even that malfunctions have not occurred in the past. Improper functioning of the elevator may have occurred previously without causing any injury or serious inconvenience and, thus, have gone unreported.

The second issue presented by the evidence is whether there was sufficient evidence of appellant's negligent conduct. The evidence on this issue was completely circumstantial, and the inference of negligence arises through application of the doctrine of *res ipsa loquitur*. In *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974), our supreme court examined this doctrine and adopted the formulation offered in Restatement (Second) Torts § 328 D (1964), which presents the rule as a shorthand expression for circumstantial proof of negligence. Section 328 D sets forth three requirements for application of the rule:

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

Once these requirements are met, a permissible inference of negligence is created.

This doctrine has been applied to cases in which machinery has operated improperly because, although it may be clear that something went wrong, no specific proof or explanation for the accident is present and the question arises whether the defect was reasonably preventable or curable by the defendant. *See, e. g., Fox v. Keystone Telephone Co.*, 326 Pa. 420, 192 A. 116 (1937) (electrical shock and burns from telephone receiver); *Fox v. Philadelphia*, 208 Pa. 127, 57 A.

356 (1904) (falling elevator). The event in the instant case is one in which the conclusion is at least permissible that such a happening would not usually occur unless someone has been negligent. Despite the fact that most machines are not foolproof, even when they are made and kept with care, the doctrine of *res ipsa loquitur* permits an inference of negligence to arise because it is a premise as to the balance of probabilities. The jury's finding of liability is drawn from the expectation that the condition or defect causing the accident was obvious enough or present for a sufficient length of time that it should have been detected by the use of ordinary care. 2 F. Harper & F. James, The Law of Torts § 19.5 (1956).

Thus, even though evidence may be presented that tends to negate the inference of negligence, the inference may not necessarily be destroyed.

> "Although the defendant testifies that he has exercised all reasonable care, the conclusion may still be drawn, on the basis of ordinary human experience, that he has not. Although his evidence is that there was no negligence in ... inspecting his elevator ..., still the fact remains in evidence that ... the elevator ... fell .... From this the jury may still be permitted to infer that the defendant's witnesses are not to be believed, that something went wrong with the precautions described, that the full truth has not been told. *As the defendant's evidence approaches complete demonstration that the event could not possibly have occurred, it is all the more clearly contradicted by the fact that it has occurred.*" Restatement (Second) Torts § 328 D, comment n (1964) (emphasis added).[2]

---

**2.** Appellant disputes the applicability of this comment to the instant case because the passage speaks in terms of the *defendant's* evidence of his own due care. Appellant claims that it was through the testimony of *plaintiff's* witnesses that much of the evidence regarding the frequency of inspections was introduced. We fail to see how the principle enunciated, that although some due care was exercised an unrevealed fault may still have occurred, is dependent upon which party produces the evidence. To some degree the defendant is put in a dilemma since showing a system of precautions may demonstrate

■ We find, therefore, that even though evidence of appellant's precautions was brought forth at trial, it was not enough for us to conclude that the jury's verdict was completely contrary to the evidence. The jury was free to conclude that appellant had not provided for sufficiently thorough or frequent inspections in its contract with Jenkins and in this manner had breached the duty owed to the tenants, including Mrs. McGowan, to keep the common approaches over which control is reserved in a reasonably safe condition. *See Lemmon v. Bufalino*, 204 Pa.Super. 481, 205 A.2d 680 (1964); *Gaynor v. Nagob*, 204 Pa.Super. 258, 203 A.2d 525 (1964).

■ Contrary to appellant's second contention, our decision that a verdict against appellant was proper dues not necessitate finding that Jenkins was also negligent and, thus, jointly responsible with appellant. As the second requirement for application of the doctrine of *res ipsa loquitur* highlights, the critical question under section 328 D of the Restatement is whether a particular defendant is the responsible cause of the injury, which is a factual determination for the jury to make. *Gilbert v. Korvette, Inc., supra.* In *Gilbert*, a company that had undertaken by contract to inspect, service, and if in their judgment conditions warranted, repair an escalator was held responsible for an injury occurring through use of that escalator. Nevertheless, we agree with the trial court that the instant case is distinguishable because of the limited duties Jenkins assumed under its contract with appellant. Unlike the maintenance contract in the *Gilbert* case, Jenkins' contract provided only for inspection and oil and grease service and did not commit

negligence in the inspection process, but use of the *res ipsa loquitur* doctrine does not mean that appellant is held strictly liable. If the precautions are sufficient, they may succeed in convincing the trier-of-fact that the occurrence could not have happened as described. The defendant may also be able to rebut the inference by showing that such an accident, as often as not, occurs despite the exercise of due care, thus demonstrating that the doctrine should not be applied. *See* Restatement (Second) Torts § 328 D, comment o (1964). In the instant case, appellant has not successfully used either of these means to rebut the inference.

to its judgment the responsibility for repairing and replacing parts. The jury could reasonably conclude from this that Jenkins' responsibility was not sufficient to infer that the harm suffered was caused by its negligence.

██ The split in the jury's verdict is further supported by the difference in relationship between the parties. In Pennsylvania the duty of an owner of an elevator to its passengers is similar to that of a common carrier, *Petrie v. Kaufmann & Baer Co.*, 291 Pa. 211, 139 A. 878 (1927); *McKnight v. S. S. Kresge Co.*, 285 Pa. 489, 132 A. 575 (1926), which is to exercise the highest degree of care. *Dayen v. Penn Bus Co.*, 363 Pa. 176, 69 A.2d 151 (1949). Although Pennsylvania no longer limits the applicability of *res ipsa loquitur* to cases in which this high standard of care is warranted, *Gilbert v. Korvette, Inc., supra*, the strict standard makes the inference of negligence easier to draw because as the precautions that one must undertake to avoid injury increase, the probability of carelessness also increases. *See* 2 F. Harper & F. James, The Law of Torts § 19.6 at 1084 (1956). Since appellant owed this high duty of care while Jenkins' duty was more limited, the jury may properly have been more hesitant in drawing an inference of negligence in the latter's case, and we do not find the evidence to be such that this inference must necessarily have been drawn.

The next series of contentions raised by appellant concerns the trial judge's charge to the jury. Appellant first argues that the court erred in rejecting two points for charge. The first point requested that the judge read a statement of facts to which the parties had agreed at pretrial conference and that he instruct the jury that they must accept these facts in their deliberations. The trial judge refused this point for charge because he felt it would unduly emphasize these facts which had already been read to the jury twice during the course of trial.

██ It is well established that the trial judge has the discretion to summarize the evidence adduced at trial, *Commonwealth v. Crawford*, 452 Pa. 326, 305 A.2d 893 (1973);

*Solomon v. Luria*, 213 Pa.Super. 87, 246 A.2d 435 (1968), and the extent of his review depends largely upon the circumstances of the case and is left within his judgment, *Commonwealth v. Walker*, 178 Pa.Super. 522, 116 A.2d 230 (1955). A review of the charge in the instant case reveals that the trial judge undertook a very brief and narrow review of the evidence, and we see no reason to disturb his judgment in refusing to repeat these facts.

We also find no reversible error in the judge's refusal to give a more limited instruction simply stating the jury's duty to admit and be bound by the agreed facts. The judge had already clearly instructed the jury when the agreed facts were introduced during trial that they must be accepted. Thus, even if the instruction may properly have been given, we find that no harm to appellant resulted from the refusal. Harmless error in a charge to the jury is not sufficient grounds for the grant of a new trial. *Mount v. Bulifant*, 438 Pa. 265, 265 A.2d 627 (1970); *Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789 (1965).

The trial judge also refused appellant's point for charge requesting that 34 Pennsylvania Code § 7.15(a)(4),[3] regarding inspection of elevators, be read and the jury instructed that "the frequency of the inspection of this elevator as testified to by Mr. Creighton was in conformity with that regulation." We disagree with appellant's contention that this was error.

For the trial judge to have stated that the requirements of the law had been fulfilled would have been an improper usurpation of the jury's function. On cross–examination of Mr. Creighton, counsel for Mrs. McGowan had attacked the accuracy of the reported dates of the inspections, and if the spacing of the inspections was such that the

---

**3.** 34 Pa.Code § 7.15(a)(4) reads as follows:
"Inspections shall be made by approved inspectors. During inspections all safety appliances shall be thoroughly examined and all violations reported. Casualty insurance companies insuring such installations shall inspect them periodically, in keeping with the type of equipment insured . . . . ."

intent of the legislation was not carried out, the statute would not have been fulfilled. The credibility of this witness was for the jury to determine. The court need not reform a point for charge, separating proper statements from improper ones to make it acceptable, unless the court's instructions would otherwise be inadequate on an important issue raised in the point. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820, *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954); *Wisniewski v. Great Atlantic and Pacific Tea Co.*, 226 Pa.Super. 574, 323 A.2d 744 (1974). *See Commonwealth v. Sisak*, 436 Pa. 262, 269 n.5, 259 A.2d 428, 432 n.5 (1969). Furthermore, the important points raised by the regulation itself had already been stated by the trial judge when he paraphrased a similar statutory regulation of the inspection of elevators. (N.T. at 237a). A trial judge is not required to use the exact language of the requested point so long as the form of expression chosen adequately and clearly covers the subject. *Boyle v. Pennsylvania Railroad Co.*, 403 Pa. 614, 170 A.2d 865 (1961). *See Rost v. Wickenheiser*, 229 Pa.Super. 84, 323 A.2d 154 (1974).

■ Appellant next contends that it was error for the court to charge the jury concerning a statute requiring locking devices in all elevators [4] because no evidence had been offered that the elevator in question was without this device. The court instructed the jury that if they found the statutory requirement was violated, then appellant would be negligent as a matter of law. We find that this instruction was not erroneous on the grounds of being irrelevant, because facts were adduced at trial that the elevator carriage was not held immovable while the door was open, thus indicating that the locking device was not functioning properly. The statute requiring these devices should not be read so narrowly as only to require the presence of the device but should be read to require a properly working device. *See Westervelt v. Dives*, 231 Pa. 548, 80 A. 1054 (1911).

4. The statute referred to in the charge is Act of May 30, 1895, P.L. 129, § 1, *as amended*, Act of March 19, 1925, P.L. 58, § 1, 35 P.S. § 1381.

■ Appellant's final contention regarding the charge concerns the propriety of the trial judge's characterization of the statutory requirement of inspection four times yearly as a minimum standard of the duty owed by the elevator owner to its users. We find that this was a correct statement of the law. In *Berkebile v. Brantly Helicopter Corp.*, 219 Pa.Super. 479, 281 A.2d 707 (1971), we made it clear that compliance with statutory requirements would prevent a finding of negligence per se and be some evidence of the exercise of due care, but would not prevent a finding of negligence in cases in which a reasonable man would take additional precautions. Because additional preventative measures may be needed to insure the safe operation of elevators, the statutory requirements can only be viewed as the minimum amount of care required. Moreover, although appellant argues that this portion of the charge was misleading because it left the standard of duty undefined and encouraged the jury to apply an unrealistic standard, we find this interpretation without support. Reading the charge as a whole, as we must to determine its adequacy, *Brennan v. St. Luke's Hospital*, 446 Pa. 339, 285 A.2d 471 (1971); *Leopold v. Davies*, 246 Pa.Super. 176, 369 A.2d 868 (1977), we find that the trial judge gave a clear and thorough explanation of the standard of care to be applied—"care that a reasonably careful person would use under the circumstances presented in this case." (N.T. at 229–230a).

Appellant's final contentions relate to the scope of cross–examination of the witness, James Creighton, permitted by the trial judge. The first objection concerns cross–examination regarding operation of the elevator without a current inspection certificate. During the course of direct examination while appellant's counsel was inquiring chronologically about inspections made subsequent to the accident and the results of those inspections, the following exchange occurred concerning an inspection made on August 21, 1973, subsequent to the accident on February 1:

"Q. Anything note worthy [sic] about the elevator?
A. Nothing except the certificate had expired, the State certificate." (N.T. at 109a).

On cross–examination, Mrs. McGowan's attorney was permitted to bring out that the certificate displayed in the elevator had expired in March of 1973 and that operation of an elevator without a current inspection certificate is a statutory violation. Appellant claims that the lack of a certificate was completely irrelevant and that this testimony was prejudicial. We disagree.

Initially, we note that the scope of cross–examination is within the broad discretion of the trial court, and we will not reverse its decision absent an abuse of that discretion. *Brennan v. St. Luke's Hospital, supra; Copper Plumbing, Inc. v. Macioce*, 225 Pa.Super. 236, 310 A.2d 411 (1973). Although cross–examination is generally said to be confined to matters testified to by the witness on direct examination, *Woodland v. Philadelphia Transportation Co.*, 428 Pa. 379, 238 A.2d 593 (1968); *Okotkewicz v. Pittsburgh Railways Co.*, 397 Pa. 303, 155 A.2d 192 (1959), this is broadly defined to include inferences, deductions, or conclusions which may be drawn therefrom, *Lester v. Century Indemnity Co.*, 356 Pa. 15, 50 A.2d 678 (1947), which explain or destroy the effect of the direct testimony, *Conley v. Mervis*, 324 Pa. 577, 188 A. 350 (1936); *Murphy v. Wolverine Express, Inc.*, 155 Pa.Super. 125, 38 A.2d 511 (1944).

Appellant's intent during direct examination regarding the frequency of inspections prior to and subsequent to the accident was to show compliance with statutes mandating periodic inspection in an effort to demonstrate that due care had been exercised. Unfortunately for appellant's purposes, the witness also conceded during direct examination [5] that the certificate had expired at one point subsequent to

---

5. Appellant argues that it is only technically true that the fact was a part of the direct testimony because the answer in which this fact was revealed was unresponsive to the question, and therefore, we should not permit it to be followed up on cross–examination. We do not find the answer unresponsive since the question was broadly worded. Even if it were unresponsive, counsel did not move to have it stricken and may not now complain that it harms his case.

the accident. The cross–examination was of limited dura-
tion and inquired only as to the period the elevator was
without a current certificate and that this was a violation of
state statute. Since appellant raised statutory compliance,
it was relevant to show an instance of noncompliance and
thereby weaken the force of the direct testimony and the
inference of due care to be drawn from it. Appellant claims
that the lack of a current certificate is irrelevant because it
was not a cause of the accident, but since a certificate may
be denied for a mechanical defect of the elevator, 35 P.S.
§ 1342,[6] we find this was relevant to the issue of due care.
This is not a case in which the cross–examination brought
the witness far beyond the purpose for which he was called
to testify, nor was it conducted in extensive detail in an
effort to enable the cross–examiner to present his own case.
*See Woodland v. Philadelphia Transportation Co., supra.* A
witness may be questioned to bring forth further details of
an occurrence with respect to which he has testified.

Furthermore, on redirect the trial court fully allowed
appellant the opportunity to limit the effect of the testimo-
ny elicited on cross–examination by offering several expla-
nations for the absence of a valid certificate that did not
indicate any fault with the operation of the elevator or an
absence of due care in providing for a current certificate.[7]
During the course of the charge, the trial judge also in-
structed the jury that every violation of a statute does not
indicate negligence because it is necessary that the violation
be a substantial factor in bringing about the harm suffered.
Under these circumstances, no basis has been shown for the
award of a new trial.

Finally, appellant claims that it was error for the trial
judge to have denied his motion in limine seeking to prevent

6. Act of May 2, 1929, P.L. 1518, § 2, *as amended*, April 8, 1937, P.L.
   277, § 1, July 29, 1941, P.L. 581, § 2.

7. Reasons suggested for the absence of the certification were that it
   was mailed to the insured but misplaced, or that it had been dis-
   played but taken down by children.

cross–examination of Mr. Creighton concerning his employment relationship with appellant's insurance carrier. Apparently in an attempt to show that the questioning was irrelevant to show bias of the witness and served only to prejudice the jury, appellant argues that the witness' sole function with regard to the insurance company was to make inspections, giving him no involvement in the investigation of claims, and that he was also acting as an official inspector of the Commonwealth. Once again, we disagree with appellant's contention.

Pennsylvania adheres to the well–recognized rule that evidence in a personal injury action that informs the jury of defendant's insurance against liability is an improper subject of cross–examination unless it serves a legitimate evidentiary purpose such as demonstrating interest, bias, or motive arising by virtue of the witness' relationship with defendant's insurance carrier. *Price v. Yellow Cab Co.*, 443 Pa. 56, 278 A.2d 161 (1971); *Goodis v. Gimbel Brothers*, 420 Pa. 439, 218 A.2d 574 (1966). Although *Goodis* involved an insurance adjuster whose interest in preventing recovery was direct and clear, the principle is no less applicable to the instant case. Employment of itself is a factor indicating interest and is properly considered when weighing a witness' testimony. *Thorndell v. Munn*, 298 Pa. 1, 147 A. 848 (1929); IIIA Wigmore on Evidence § 949 at 786 (Chadbourn rev. 1970). *See O'Donnell v. Bachelor*, 429 Pa. 498, 240 A.2d 484 (1968) (error to refuse questioning of private investigator hired by insurance company concerning his employment). The instant witness was paid by the insurance company to make inspections and had an interest in showing his own work was thorough in order to preserve his job with the company. This interest is not negated by the Commonwealth's review of his reports. The jury was entitled to know these facts to determine the witness' credibility.

In accord with the foregoing reasoning, we affirm the judgments in the court of common pleas.