**Michael J. TAIT and Monica Tait, his wife, Appellants,**

v.

**ARMOR ELEVATOR COMPANY, and Prudential Insurance Company of America, Appellees.**

No. 91–1378.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Oct. 10, 1991.

Decided March 12, 1992.

Rehearing and Rehearing In Banc Denied April 10, 1992.

Stephen R. Bolden, Michael S. Lubline, Debra Schwaderer Dunne Fell & Spaulding, Philadelphia, Pa., for appellants.

William J. Conroy, White and Williams, Philadelphia, Pa., for appellee, Armor Elevator Co.

Ralph P. Bocchino, Christine M. Brenner, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, Pa., for appellee, Prudential Ins. Co.

Before MANSMANN, NYGAARD and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Monica and Michael Tait (plaintiffs), appeal a final judgment of the district court in favor of defendants, Armor Elevator Company (Armor) and Prudential Insurance Company of America (Prudential). The district court exercised diversity jurisdiction under 28 U.S.C. § 1332. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

Plaintiffs brought this negligence action against Prudential and Armor for injuries allegedly suffered by plaintiff Michael Tait as a result of an abrupt stop of a descending elevator in which he was the sole passenger. Prudential owned the building where the accident occurred. Armor was under contract with Prudential to inspect, repair and maintain the building elevators.

In June of 1988, it also contracted to modernize the elevators.

At the close of plaintiffs' case, the district court granted a directed verdict in favor of Prudential and entered a judgment accordingly. The trial continued against Armor and resulted in a jury verdict in its favor based on a finding of no negligence. After entry of judgment therein, the district court denied plaintiffs' motion for a new trial. This appeal against both defendants followed.

## I. JURY VERDICT FOR DEFENDANT ARMOR

The plaintiffs contend that the district court erred in denying their motion for a new trial against Armor.

Plaintiffs first assert that the district court gave an erroneous jury instruction as to the standard of care that Armor owed to plaintiff Michael Tait. In their "Revised and Supplemental Points for Charge," plaintiffs sought a "highest duty of care" instruction. Although the issue of its propriety was apparently argued, no subsequent ruling can be found in the appendix. Counsel was asked by us to comment on this apparent defect. Their responses, particularly Armor's, leave us with the definite impression that the district court, in fact, rejected plaintiffs' request at a sidebar conference during the trial.[1]

■ We conclude that there was a definitive ruling before the jury instructions were given. Therefore, we determine that the issue of instructional error was preserved. *Bowley v. Stotler & Co.*, 751 F.2d 641, 646–47 (3d Cir.1985).

As noted, plaintiffs first argue that the jury instruction was erroneous under controlling Pennsylvania law since it failed to correctly instruct the jury as to the duty of care owed by Armor to passengers under the present circumstances. The plaintiffs asked the district court to instruct the jury as follows:

> Armor owes to the plaintiffs Michael Tait a duty of care similar to that of a com-

---

**1.** We do not know why the sidebar ruling was apparently not captured by the audio tracking system as required by the Electronic Sound Recording Operator's Manual 6.2.

mon carrier [and,] ... as such, is required by the law to use a higher degree of care for the safety of passengers who ride upon the elevators maintained, inspected and repaired by it, than that ordinarily imposed on others and it must be judged by a much stricter standard ... [namely,] the highest degree of diligence and care in the operation and maintenance of its elevators.

Instead of honoring their request, the court instructed the jury to decide whether Armor breached its duty of care "under all the circumstances." The instructions recited further:

[W]hat constitutes ordinary care varies according to the particular circumstances and conditions and that amount of care required by law must be in keeping with the degree of dangers involved.... [I]n deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in light of all the surrounding circumstances that are shown by the evidence in the case.

Plaintiffs alleged in their motion for a new trial that the district court's refusal to instruct the jury that Armor owed plaintiff Michael the highest degree of care constituted error. On appeal, they say that since Armor assumed contractual duties to inspect, repair and maintain the elevators, it "must of necessity have assumed the same obligations to passengers as was owed to them by Prudential," the highest degree of care.

The district court denied the motion on the ground that the instructions given fairly reflected the duty of an elevator service company to passengers under Pennsylvania law. The court explained:

In speaking about duty of care in *Benson v. Penn Central Transportation Co.* [463 Pa. 37], 342 A.2d 393 (Pa.1975), the Supreme Court of Pennsylvania said "it is true, of course, that our cases have placed upon common carriers a duty to use 'the highest degree of care for (their passengers) safety.'" (citations omitted.) However, as Dean Prosser correctly states, "Although this language ... seems to indicate that a special standard

is being applied, it would appear that none of these cases should logically call for any departure from the usual formula. What is required is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility is merely one of the circumstances, demanding only an increased amount of care." I believe my instructions to the jury referred to previously were consistent with the law.

*Tait v. Armor Elevator Company and Prudential Life Insurance Company of America,* No. 89–6313 (E.D.Pa.), slip. op. 4, 1991 WL 67737 (Buckwalter, J.)

The district court's instructions must be viewed as a whole and read in light of all the evidence. Under such a review, the ruling should be reversed only if it does not fairly and adequately submit the issue to the jury and, thereby, confuse or mislead the jury. *Link v. Mercedes–Benz,* 788 F.2d 918, 922 (3d Cir.1986).

The Pennsylvania Supreme Court has stated that a common carrier "is negligent if a reasonable man under like circumstances would recognize that it involves an unreasonable risk of causing harm to another." *Benson,* 342 A.2d at 397. The *Benson* court reasoned further that the fact that the cab company was a common carrier did not affect the applicability of this definition of the standard of care:

It is true, of course, that our cases have placed upon common carriers a duty to use "the highest degree of care for [their passengers'] safety." (citations omitted). However, as Dean Prosser correctly states, "although [this] language ... seems to indicate that a special standard is being applied, it would appear that none of these cases should logically call for any departure from the usual formula. What is required is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility is merely one of the circumstances demanding only an increased

amount of care." W. Prosser, *The Law of Torts*, § 34, at 181 (4th ed. 1971). *Id.* at 397 n. 11.

■ Without discussing *Benson*, the plaintiffs argue that, under Pennsylvania law, an elevator service company owes the highest degree of care to its passengers when it acts as a common carrier. This argument is not supported by Pennsylvania precedent. Prior to *Benson*, former Chief Justice Jones in his concurrence in *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94, 105 (1974), extrapolating from *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961), stated "it is clear that the duty owed by a service contractor to third parties is uniformly one of *ordinary care* and does not vacillate to conform with the standard of care which the law has placed on the other party to the contract." However, the majority in *Gilbert* did not determine the extent of the tort law duty of care owed by such a service company to elevator passengers.

The Pennsylvania Supreme Court has not decided whether it will apply to an elevator service company the duty of care standard articulated in *Benson* for common carriers. Further, we recognize that there is a division of authority nationally on the issue of the standard of care owed to passengers by an elevator company arising from its contract to service and maintain an elevator. *Prosser and Keaton on the Law of Torts*, § 34 at 208–9 n. 5–14 (1984; Supp.1988). *See also* 64 A.L.R.3d 950, 962–64, 974 (1975). Nevertheless, the case law in Pennsylvania, particularly the quoted footnote in *Benson*, leads us to believe that the Supreme Court of Pennsylvania would adopt the same duty of care as to an elevator service contractor that it has applied to other common carriers. Thus, we find no error under Pennsylvania law in the instruction given as to Armor's duty of care.

■ The plaintiffs' second allegation of trial error is based on the following statement by counsel for Armor in his closing argument to the jury:

Let me try and put in perspective what I am driving at. We often pick up the newspaper and we read that a jury verdict has resulted and you start reading through it and you say to yourself, my God, how could they have done what they did with the evidence they had on the issue they had to decide? Because you read it, you say, I can't believe it. Well, you can imagine picking up a newspaper and reading that a jury had awarded a person or had concluded that a person had a certain injury at one point in time, when his own doctors agreed that the symptoms that would evidence that injury, all pre-existed the date when he said it occurred? Can you imagine that? Well, that's what you're being asked to do, if I may say so, to put it in perspective for you.

App. at 843–44.

Although plaintiffs did not object to these remarks at trial, they asserted in their motion for a new trial that these remarks constituted plain error. They argued that the remarks were improper because they suggested to the jury that the plaintiff Michael Tait was a malingerer and attempted to link his claim to other frivolous law suits reported in the newspapers.

Even entertaining plaintiffs' argument under the stringent standard of the plain error doctrine, we agree that the district court properly denied plaintiffs' new trial motion. As it said, the remarks had no "reasonable probability of improperly prejudicing the jury and influencing its verdict." Thus, the district court did not abuse its discretion in its ruling on this issue.

Finally, plaintiffs seek a new trial against Armor on the ground that the district court improperly excluded certain "Elevator Logs" that recorded tenant complaints and which were kept on a regular basis by Prudential's building manager. The purpose of these tenant logs was to record tenant complaints about elevator operation problems and Armor's response time in dealing with them. These logs showed a pattern of unexplained malfunctions, other than abrupt stops, in elevator No. 7. They also showed evidence of abrupt stops in No. 7 both *before* and *after* the accident. Finally, the logs kept by

Prudential revealed incidents in the same bank of mid-rise elevators during the year leading up to the accident in July of 1988.

Plaintiffs sought to introduce these logs to establish three propositions: (1) that the defendants had notice or knowledge of the dangerous condition and its magnitude, (2) that defendants had an ability to correct a known danger, and (3) that the defendants knew of the likelihood of injury in connection with an accident.

Prior to trial, both defendants filed motions *in limine* to exclude the tenant logs on the ground that the evidence of prior malfunctions in the same bank of elevators other than No. 7 and incidents in other elevators was not probative and should be excluded under Federal Rule of Evidence 402 (Only relevant evidence admissible). Alternatively, they contended that the evidence was too prejudicial and must be excluded under Rule 403 (when relevant evidence excluded). The defendants asserted that the plaintiffs should be limited to introducing evidence from the logs showing malfunctions *prior* to the incident involving plaintiff Michael on July 18, that resulted from abrupt stops in elevator No. 7.

Plaintiffs argued that the evidence was relevant because poor maintenance of the interconnected safety circuits had caused accidents of a similar nature in both elevator No. 7 and the other elevators. They contended that these circuits would have caused malfunctions in all the elevators because they were exposed to the same environment of dust, dirt and corrosion common to all the mid-rise bank elevator shafts.

The district court reserved ruling on this matter until the plaintiffs had presented other evidence. The plaintiffs presented expert testimony to show that the accident alleged by plaintiff Michael would only result from negligence and that dust, dirt or corrosion in the circuits may have caused the alleged abrupt stop in elevator No. 7. The reports of the plaintiffs' experts were submitted to support their request for admission of the evidence of prior accidents and malfunctions. The defendants presented testimony of an expert, Mr. Steven Man-

gold, refuting their theory. Mr. Mangold testified that the safety circuitry of each elevator was separate and would not affect the operation of any other elevator in the same bank of elevators.

The court concluded that plaintiffs' experts had drawn unsubstantiated conclusions about the causal relationship between malfunctions due to bad circuits in any of the mid-rise elevators and a malfunction in elevator No. 7. Thus, the district court granted the defendants' motions *in limine* insofar as they sought to exclude the evidence of malfunctions in all the elevators, except No. 7. It also excluded all evidence of malfunctions in elevator No. 7 occurring *after* the incident involving plaintiff Michael. As to the excluded evidence, the court held that "it would have been more prejudicial than probative to let into testimony problems in elevators other than elevator No. 7."

The court did rule that the logs showing *prior* instances of abrupt, sudden or jolting stops in elevator No. 7 were admissible "to lend credibility to plaintiff's unwitnessed account of what happened to him when he was in the elevator alone." Finally, the district court allowed plaintiffs' experts to testify about evidence in their reports about *prior* abrupt stops in elevator No. 7, but excluded any reference by them to accidents in other elevators or in elevator No. 7 occurring *after* the date of the alleged accident.

We review for abuse of discretion the district court's rulings with respect to plaintiffs' evidentiary tenders. *United States v. Stewart*, 806 F.2d 64, 68 (3d Cir. 1986). The admission or exclusion of evidence is a matter well suited to the exercise of the district court's discretion. *In re Merritt Logan, Inc.*, 901 F.2d 349, 359 (3d. Cir.1990).

■ After a review of the record and in light of the rules of evidence applied by the district court, we cannot say that it committed reversible error in its evidentiary rulings. The evidence of malfunction in other elevators was found inadmissible because the plaintiffs' theory of concurrent causation of the malfunction in several elevators

at once was purely speculative. Accordingly, plaintiffs did not establish the cause of the accidents in the other elevators or make a sufficient showing that they were related to the accident in elevator No. 7. The district court therefore acted within the scope of its legitimate discretion in excluding reports of malfunctions of the other elevator *prior* to the accident, given the prejudicial and speculative nature of such evidence.

■ Finally, the district court did not abuse its discretion in excluding evidence of subsequent malfunctions in elevator No. 7. *Gumbs v. International Harvester*, 718 F.2d 88, 97–98 (3d Cir.1983); *Wojcieschowski v. Long–Airdox Div.*, 488 F.2d 1111 (3d Cir.1973). These incidents in elevator No. 7 after July 18 were not shown to be similar enough to the circumstances in this case to overcome the prejudice inherent in admitting this evidence.

We will, therefore, affirm the judgment of the district court in Armor's favor. Thus, we need not address Armor's alternative ground for affirmance that the district court erred in refusing to direct a verdict in its favor based on the insufficiency of plaintiffs' evidence.

## II. DIRECTED VERDICT FOR PRUDENTIAL

Plaintiffs appeal the order of the district court granting Prudential's motion for a directed verdict at the close of plaintiffs' case. In proceeding with the case against Armor the district court informed the jury that Prudential had been "dismissed because there was no evidence against the defendant as a matter of law, upon which you could find Prudential was negligent here." [2] In rejecting the plaintiffs' motion for a new trial,[3] the district court observed that,

> [T]here was no evidence of any culpable conduct on the part of Prudential. Prudential was the owner of the building in

which the elevator was installed but the uncontroverted evidence was that Armor had sold an [sole and] exclusive control of the elevators and that plaintiff was basing its cause of action on the basis of Armor's failing to properly maintain the elevators. We accordingly find no merit to plaintiff's contention that the entry of a directed verdict was incorrect.

*Tait*, slip op. 10. The district court's opinion did not discuss whether there was sufficient evidence to satisfy the elements of *res ipsa loquitur* in order to create a permissible inference of Prudential's negligence.

In granting a directed verdict in Prudential's favor, however, the district court must have found *either* (1) that Prudential delegated its duty of care by contract to Armor or (2) that there was insufficient evidence to warrant giving a *res ipsa loquitur* instruction against Prudential. On appeal, plaintiffs contest the correctness of the district court's action.

■ Review of a directed verdict is plenary. "A motion for directed verdict should be granted only if, viewing the evidence in the light most favorable to the non-moving party, there is no question of material fact for the jury, and any verdict other than the one directed would be erroneous under the governing law." *MacLeary v. Hines*, 817 F.2d 1081, 1083 (3d Cir.1987). The district court must deny a defendant's directed verdict motion under this standard "if there is evidence reasonably tending to support the recovery by the plaintiffs as to any of its theories of liability." *Bielevicz v. Dubinon*, 915 F.2d 845, 849 (3d Cir.1990).

Our first task is to determine whether the district court correctly found that Armor had sole and exclusive control of the elevator.

■ In doing so, we shall assume without deciding that Prudential could have relieved itself of any legal responsibility to

---

**2.** The trial court also dismissed Prudential's cross-claim against its co-defendant, Armor Elevator Co.

**3.** We need not decide whether a motion for a new trial under Fed.R.Civ.P. 59 was available to plaintiffs where their claim against Prudential had been dismissed by a directed verdict.

plaintiffs under Pennsylvania law by delegating sole and exclusive control to its service contractor. But such an assumption does not help Prudential here because it is clear on this record that it too owed plaintiff Michael, as an elevator passenger, a duty of care.

The contract between Armor and Prudential demonstrates that Prudential reserved to itself ultimate control over its elevators and their operation. While the service contract delegates primary responsibility for installation, inspection repairs and maintenance to Armor, the service company did not assume sole and exclusive control of elevator No. 7. In pertinent part, the contract governing Armor's installation of the new elevator safety circuits states that, "Armor does not assume possession, management, or control of any part of the equipment, but such remains purchaser's exclusively as the owner or lessee thereof." Plaintiff's Exhibit 10. Nor was Armor required "to make renewals or repairs necessitated by non-repetitive or infrequent fluctuations in the AC power systems or extreme variations in machine room temperature, or by negligence or misuse of the equipment." *Id.* It further provides that the purchaser, Prudential, is responsible "to keep the elevator pit(s) and machine room(s) free from water and to not use these areas for storage purposes." *Id.*

In addition, under the contract, Armor does not agree "to install new attachments on the elevators whether recommended or directed by insurance companies or governmental authorities, or to make any replacements with parts of a different design, or to replace or realign guide rails." Still further, Armor assumed no responsibility under the contract over the following parts of the elevator's mechanisms and equipment: "the car enclosure, hoistway, enclosures, fixture faceplates, power switches, fuses and electrical power feeders to controllers."

Finally, Prudential owes the following contractual duty to Armor under the agreement:

TO GIVE ARMOR NOTICE WITHIN TWENTY–FOUR (24) HOURS OF ANY ACCIDENT, ALTERATION OR CHANGE AFFECTING THE EQUIPMENT AND OF ANY CHANGE OR OWNERSHIP; TO DISCONTINUE IMMEDIATELY THE ELEVATOR FROM SERVICE WHEN THE EQUIPMENT BECOMES UNSAFE OR OPERATES IN A MANNER WHICH MIGHT CAUSE INJURY TO A USER THEREOF.

The record does not show whether Prudential gave Armor the required notice after each of the 19 separate reported malfunctions prior to Mr. Tait's alleged accident on elevator No. 7.

The provisions of the service contract, without more, amply demonstrate that a jury could find that Prudential retained substantial control over the elevators and their operation. Thus, a jury could infer that the accident may have resulted from Prudential's independent negligence. This being so, we conclude that the district court erred in stating that Prudential could not be negligent because Armor was given sole and exclusive control of elevator No. 7.

We find unacceptable Prudential's view that this case is controlled by *Brletich v. United States Steel Corp.*, 445 Pa. 525, 285 A.2d 133 (1971), where the court held that a property owner delegated its duty of care to a demolition contractor to demolish a structure on its land. Unlike *Brletich,* there is evidence in this case to show that Prudential never fully surrendered actual control over the instrumentality to Armor. Further, the contract specifically provides that Armor would not take control, or even temporary possession, of the elevator.

Given these record facts, we conclude that Prudential also owed plaintiff Michael a duty to anticipate or guard against the risks that might result in injury to its elevator passengers. Thus, Prudential's responsibility or "control" was a proper subject for jury determination. *Gilbert,* 327 A.2d at 102, *citing Restatement (Second) of Torts,* § 328C (1965).

■ Having determined that Prudential did not delegate its tort law duty of care, we must now determine the standard of care that plaintiff was owed by Prudential

as owner of the elevator. Under controlling Pennsylvania law, Prudential, as building owner, is a common carrier who owes a duty of care to maintain the elevator in a reasonably safe condition for passengers. *See generally, McKnight v. Kresge,* 285 Pa. 489, 132 A. 575, 577 (1926); *Gilbert,* 327 A.2d at 97; *Lynch v. McStome & Lincoln Plaza Assoc.,* 378 Pa.Super. 430, 548 A.2d 1276, 1279 (1988); *McGowan v. Devonshire Hall Apartments,* 278 Pa.Super. 229, 420 A.2d 514, 519 (1980). It was clearly within the scope of Prudential's duty as owner of the instrumentality to make thorough inspections, to keep the common approaches ... in a reasonably safe condition, and to operate the elevator in a reasonably safe manner. *McGowan,* 420 A.2d at 519. Moreover, Prudential owed this duty even though it contracted with an elevator service company to perform some, but not all, of its duties with respect to the elevators.[4]

The Pennsylvania intermediate appellate courts have consistently held that the owners of elevators owe a duty to elevator passengers similar to that of a common carrier. For example, in *Dallas v. F.M. Oxford,* 381 Pa.Super. 89, 552 A.2d 1109, 1111 n. 4 (1989), the court found that a building owner and an elevator service company could be found negligent in failing to install an elevator door safety device. Similarly, in *McGowan,* the court held that an apartment house owner's negligence could be inferred from its failure to provide for frequent enough or proper inspections based on evidence of the plaintiff's injury when a door closed as she exited an elevator in the building. *McGowan,* 420 A.2d at 519 n. 2. In *Carney v. Otis Elevator Co.,* 370 Pa.Super. 394, 536 A.2d 804 (1988), the negligence of both the building owner and the elevator service company were established, although the evidence showed that the duty to inspect was under the service company's exclusive control. *Id.,* 536 A.2d at 806.[5] Given that Prudential exercised joint control over the

elevator, it owed a duty of care as a common carrier to its elevator passengers under Pennsylvania law.

■ We must next decide whether a *res ipsa loquitur* instruction may be warranted against the owner of an elevator who shares joint control over that instrumentality with an elevator service company. The district court did not decide whether the evidence showing that Prudential jointly controlled the elevator with Armor would permit a finding under Pennsylvania law that Prudential was negligent in causing the alleged accident. Prior to *Gilbert,* the Pennsylvania courts limited *res ipsa loquitur* instructions to cases where defendants had "exclusive control" of the instrumentality allegedly causing the accident. *Izzi v. Philadelphia Transportation Co.,* 412 Pa. 559, 195 A.2d 784, 788 (1963). However, the Pennsylvania Supreme Court thereafter abandoned these "arbitrary requirements [that] have been imposed by earlier cases." *Gilbert,* 327 A.2d at 98. In consequence, the application of the *res ipsa loquitur* doctrine to a building owner in Pennsylvania no longer depends on whether or not the owner exercised exclusive control over the instrumentality. *Id.* at 99, 101; *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134, 1137, 1139 (1981).

Most jurisdictions apply the Restatement rule on *res ipsa loquitur* to multiple defendants, so long as the defendants are joint tortfeasors or have joint control over the instrumentality causing the injury. *See* 59 A.L.R. 4th 201 (1988). This is the Pennsylvania rule. Thus, *Gilbert* held that "if *responsibility* is vested in and shared by two or more parties, [such as a building owner and its independent contractor], each may be subjected to liability under the rule we adopt." *Id.* at 101, (*citing* Restatement § 328D, cmt. g and illus. 8; 38 A.L.R.2d 905 (1954); 58 Am.Jur.2d Negligence § 503. *See generally* 63 A.L.R.3d 893, 996 (1975).

---

4. We do not decide, however, whether the negligence of an independent elevator service contractor is attributable to the owner of the building.

5. The building owner in *Carney* did not appeal the verdict of liability after the jury determined that it was 10% at fault.

While it is not clear to us whether the district court decided the issue in ruling on the correctness of the directed verdict, we must determine whether the plaintiffs produced sufficient evidence on the issue of Prudential's negligence to require that the issue be submitted to a jury. To analyze this issue, we must first determine the scope of plaintiffs' allegations regarding Prudential's breach of the duty of care it owes to its elevator passengers. The district court granted Prudential's motion for a directed verdict on the assumption that "plaintiffs were basing their cause of action on the basis of Armor's failing to properly maintain the elevators." This reading of plaintiffs' complaint is too narrow. Plaintiffs sued Prudential for its breach of its duty of care in operating and maintaining the elevators. Additionally, the plaintiff alleged that Prudential breached its duty to warn passengers of dangerous and defective conditions.

We now ask whether there was adequate evidence of Prudential's breach of its duty of care to warrant a jury instruction on *res ipsa loquitur*. Plaintiffs sought to establish Prudential's negligence by circumstantial proof. In some cases, where a party seeking to establish negligence does not establish the exact cause of the injury, he may rely upon *res ipsa loquitur*, a rule of evidence, that permits jury to infer the cause of the injury from the circumstances of the event. The Pennsylvania Supreme Court has adopted the Restatement § 328D view that permits the jury to infer the defendant's negligence if the following three elements are satisfied:

    (a) the event is of the kind which ordinarily does not occur in the absence of negligence;

    (b) other responsible causes, including the conduct of the plaintiffs and third persons, are sufficiently eliminated by the evidence; and

    (c) the indicated negligence is within the scope of the defendant's duty to the plaintiffs.

*Gilbert*, 327 A.2d at 100 (*citing* Restatement § 328D.) When the court determines that all three elements of section 328D(1)

have been met, the negligence issue must be given to the jury. *See* Restatement § 328D(2). *See also Carney*, 536 A.2d at 806; *Smith v. City of Chester*, 357 Pa.Super. 24, 515 A.2d 303, 305 (1986); *Lanza v. Poretti*, 537 F.Supp. 777 (E.D.Pa.1982).

Plaintiffs easily satisfied the first element of Section 328D(1). Plaintiff Michael testified that elevator No. 7 made an abrupt stop during its descent near the 19th floor on July 18, 1988 causing him to injure his back. As with plaintiff Michael's accident, "there are many events, such as ... the fall of an elevator ... where the conclusion is at least permissible that such things do not usually happen unless someone has been negligent ... [and] to such events *res ipsa loquitur* may apply." Restatement § 328D(1), cmt. c. *See also McGowan*, 420 A.2d at 518. Moreover, in the claim against Armor, the district court found that the evidence was sufficient to satisfy the first element of § 328D(1). The same evidence satisfies this element in the claim against Prudential.

Second, plaintiffs' evidence permitted a conclusion that the conduct of plaintiff Michael and other third parties was not a responsible cause of the accident. The plaintiffs' expert, Mr. Thomas W. Carroll, former chief elevator inspector in the Commonwealth of Pennsylvania, testified that the circumstances of the accident meant that it was not caused by its passenger's activation of the emergency stop button. Mr. Carroll also testified that the abrupt stop of the elevator was not caused by a loss of electrical power from an outside source, such as a power failure due to the fault of the electrical company.

The evidence was therefore sufficient to permit an inference that the first and second elements of § 328D were met. The abrupt stop was an accident that would not have occurred in the absence of negligence and the plaintiff was not responsible for that abrupt stop.

We must next consider whether plaintiffs' evidence supported an inference that the alleged negligence was within the scope of Prudential's duty of care. The evidence of the plaintiffs' experts shows that Pru-

dential's negligence may have caused plaintiff Michael's injury. These experts testified that the alleged accident was most likely caused by a failure of those responsible to properly maintain its elevators in a reasonably safe condition. Before testifying, the plaintiffs' three experts studied the records of 19 separate prior malfunctions to elevator No. 7 and numerous problems in the other elevators at Five Penn Square. They also inspected elevator No. 7 and reviewed plaintiff Michael's deposition testimony.

After this examination, these experts testified that the abrupt stop was most likely a result of negligent maintenance leading to a malfunction in the elevator's circuits and/or its electronic controller. First, Mr. Raymond Harkinson, the mechanic who maintained elevator No. 7 for Armor in July of 1988 (the month of the accident), testified that the elevator accident most likely resulted from accumulated dirt, dust and/or corrosion in the elevator's safety circuits. Second, Nicholas Haneman, a mechanical engineer, corroborated this view that the accident was caused by a malfunction in the safety circuits and/or in the electronic controller due to improper maintenance.

Third, Mr. Carroll agreed with the other experts' evaluations that substandard maintenance to the elevator's safety circuits most likely caused plaintiff Michael's accident. Mr. Carroll also observed that Prudential may have caused the accident by failing to take elevator No. 7 out of service when it began "running strange" eleven days before the accident.

In addition to this testimony by the plaintiffs' experts, the record shows that Prudential was aware of malfunctions in the elevator. It received tenant complaints about the problems in that elevator. Moreover, at various times, Prudential monitored Armor's performance of its maintenance and repair obligations when the elevators malfunctioned.

Because Prudential kept no repair records to indicate whether the problems in the operation of elevator No. 7 had been corrected prior to plaintiff Michael's al-

leged accident, the issue of Prudential's possible negligence remained. The plaintiffs' *prima facie* burden is met when "the facts proved reasonably permit the conclusion that the defendant's negligence is the more probable explanation." *Sedlitsky v. Pareso*, 400 Pa.Super. 1, 582 A.2d 1314, 1316 (1990) (*quoting* Restatement § 328D, cmt. e.) *See also Hollywood Shop, Inc. v. Pennsylvania Gas and Water Co.*, 270 Pa.Super. 245, 411 A.2d 509, 511 (1979).

The plaintiffs produced evidence to support their allegation that Prudential's substandard maintenance caused the accident by allowing dust and dirt in the circuitry. On this record, Prudential may also have been responsible for allowing corrosion to build up in the circuits due to water exposure. Finally, the jury could well infer from this record that the alleged accident was caused by defects in the elevator equipment that were due to Prudential's failure to inspect and/or to properly supervise the repair of the elevator.

From the foregoing evidence, the jury could infer from the record that Prudential was negligent in failing to conduct inspections, to maintain the elevators according to the standard of care it owed its passengers, and to monitor the elevator's operation in a safe manner. *Gilbert*, 327 A.2d 94; *McGowan*, 420 A.2d at 519. The evidence permitted a legitimate inference under Pennsylvania law that Prudential's failure to properly maintain the elevator may have been a "substantial factor" in causing plaintiff Michael's injury. *See generally, Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284–85 (1978); *Halsband v. Union Nat. Bank of Pittsburgh*, 318 Pa.Super. 597, 465 A.2d 1014, 1018 n. 3 (1983).

Thus, it was error to grant Prudential's motion for a directed verdict.

## CONCLUSION

The judgment of the district court in Armor's case will be affirmed. The judgment of the district court in Prudential's favor will be reversed and the matter remanded for a new trial. The district court's order dismissing Prudential's cross-

claims against Armor will be vacated and the claim remanded for an appropriate resolution.